IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONN CREDIT I, LP, | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 4:15-cv-03713 |
| SHERMAN ORIGINATOR III LLC, | § § § | |
| Defendant. | § § | |

## SUPPLEMENTAL DECLARATION OF BRUCE L. BLACKER

1. My name is Bruce L. Blacker. I am over 21 years of age, and I am of sound mind and fully competent to make this Declaration. All of the facts contained in this Declaration are within my personal knowledge, unless otherwise stated, and are true and correct.

### I. BACKGROUND AND ASSIGNMENT

2. I have been retained as a financial and damages expert by counsel for Conn Credit I, LP in the matter of *Conn Credit I, LP v. Sherman Originator III LLC*. It is my understanding that Conn Credit I, LP ("Conn") and Sherman Originator III, LLC ("Sherman") entered into a Purchase and Sale Agreement effective September 15, 2014 ("PSA") wherein Sherman agreed to purchase a substantial amount of consumer loans that had been charged off by Conn ("Bulk Sale") and consumer loans that would be charged off on a monthly basis by Conn ("Forward Flow") through July 2015 (collectively, the

CONFIDENTIAL


EXHIBIT T-1

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

"Portfolio").[1] I understand that Conn alleges that Sherman breached the PSA by failing to comply with its payment obligations for Delivery No. 3 and subsequent deliveries in the Forward Flow.[2] I have been requested by counsel for Conn to evaluate the damages suffered by Conn as a result of Sherman's breach of the PSA.

3. On September 16, 2016, I executed the Declaration of Bruce L. Blacker ("Blacker Declaration") in this matter. Discovery was on going at the time I issued my declaration. Subsequent to the issuance of the Blacker Declaration, it was discovered that Conn had produced account data which was derived by applying certain exclusion rules[3] to Conn's customer accounts using account information as it existed at the time the data was being obtained for this litigation (i.e., 2016). However, the exclusion rules should have been applied to Conn's accounts using the account information that existed at the time the consumer loans were charged off (i.e., October 2014 through July 2015). Therefore, Conn has now supplemented its account information after applying the exclusion rules retroactively.

4. Counsel for Conn has asked that I supplement the Blacker Declaration based upon Conn's supplemental account information. My qualifications, findings, and opinions are contained in the remainder of this declaration and the associated exhibits.

---

[1] See Plaintiff's Original Complaint, pp. 2 – 3. See also Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014.

[2] See Plaintiff's Original Complaint, pp. 3 – 4.

[3] It is my understanding that Conn agreed to sell and Sherman agreed to purchase consumer loans that had been charged off by Conn and which were not subject to certain exclusion rules. The exclusion rules were provided to me by Mr. Clint Walton (Conn's Credit Compliance Officer) and can be found in **Exhibit 6**. An explanation or description of the class codes associated with the exclusion rules is contained in **Exhibit 7**.

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

## II. QUALIFICATIONS AND EXPERIENCE

5. I am a Vice President at Analysis Group, Inc. ("AG"). AG provides economic, financial, and business strategy consulting to its clients and specializes in the interpretation of economic and financial data and the development of economic and financial models. Internationally, AG consists of over 600 professionals who specialize in, among other things, the fields of economics, accounting, finance, and strategy consulting.

6. My primary responsibility at AG is to provide accounting, economic, financial, and damage quantification consulting services to clients. During my career I have provided financial consulting services in breach of contract, intellectual property (copyright infringement, patent infringement, trade dress, trademark, and trade secrets), lender liability, mismanagement/negligence, securities-related, wrongful death, and wrongful termination claims. I have provided expert testimony in deposition and trial settings.

7. I specialize in the application of accounting, economic, and financial principles to complex financial disputes, and I am generally retained in cases requiring financial analyses. During the course of my career, I have frequently performed financial analyses using large databases of information and complex computer models.

8. I received my Bachelor of Science in Accounting from Brigham Young University in 1989 and a Masters in Accounting from Brigham Young University in 1989. I am a Certified Public Accountant ("CPA") licensed in the state of Texas (AG is not a CPA firm) and Certified in Financial Forensics ("CFF") by the American Institute of Certified Public Accountants. Attached as **Exhibit 1** is a true and correct copy of my current resume. **Exhibit 2** is my trial and deposition testimony experience. My business address is Analysis Group, Inc., 2911 Turtle Creek Blvd., Suite 600, Dallas, Texas, 75219.

CONFIDENTIAL

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

9. AG is being compensated based upon hours incurred and the hourly rates of the personnel involved. Payment to AG is not contingent upon my findings or the outcome of this matter. AG is being compensated at a rate of $500 per hour for my time. Hourly rates for other AG personnel working on this matter range from $200 to $450 per hour, depending upon their level and experience.

### III. FACTS, DATA, AND INFORMATION RECEIVED

10. The facts, data, and information available to me in forming my opinions are contained in **Exhibit 3** or elsewhere in my report (including exhibits). Examples of the types of information available to me include the following:

    a. legal documents (e.g., Plaintiff's Original Complaint; Defendant's Answer and Affirmative Defenses to Plaintiff's Original Complaint, and Original Counterclaims; Plaintiff's Answer to Defendant's Original Counterclaims);

    b. documents produced by Conn (e.g., Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014 ("PSA"); account data relating to charged off accounts subject to the PSA, exclusion rules, supplemental account data relating to charged off accounts subject to the PSA); and

    c. information independently obtained (e.g., Conn's, Inc. SEC filings)

11. In addition, during my work on this matter, I held a discussion with Mr. Clint Walton (Conn's Credit Compliance Officer). My analyses and opinions are based upon the information available to date and are contained throughout this declaration. I reserve the ability to (a) review documents, deposition transcripts, expert reports, or other information still to be provided by the Parties to this dispute and (b) supplement my opinions based upon that review, if appropriate. I also reserve the ability to prepare and use demonstrative exhibits and/or other information at trial to illustrate my opinions.

CONFIDENTIAL

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

## IV. OVERVIEW OF PARTIES

### A. Conn Credit I, LP

12. Conn Credit I, LP ("Conn") is a Texas limited partnership with its principal place of business in The Woodlands, Montgomery County, Texas.[4] Conn is a subsidiary of Conn's, Inc., a specialty retailer that offers a broad selection of durable consumer goods and related services in addition to in-house consumer credit solutions for its customers.[5] Conn's, Inc.'s product offerings include home appliances, consumer electronics, home office products, furniture, and mattresses.[6]

### B. Sherman Originator III, LLC

13. Sherman Originator III, LLC ("Sherman") is a Delaware limited liability company with its principal place of business in South Carolina.[7] According to the PSA executed in September 2014, Sherman was the successful bidder for the purchase of the Portfolio of Conn's charged off accounts, including the Bulk Delivery and Forward Flow of charged off accounts through July 2015.[8]

## V. EVALUATION OF CONN'S DAMAGES RESULTING FROM SHERMAN'S BREACH OF THE PSA

14. Based upon (a) my accounting, financial, and damage quantification training and experience, (b) my review of documentary evidence, (c) my analysis of the relevant consumer credit account data, (d) a discussion with Mr. Clint Walton (Conn's Credit Compliance Officer), (e) standard and generally accepted damage quantification

---

[4] Plaintiff's Original Complaint, p. 1.

[5] Conn's, Inc. Form 10-K for the fiscal year ended January 31, 2015, pp. 3 – 4 and Exhibit 21.

[6] Conn's, Inc. Form 10-K for the fiscal year ended January 31, 2015, p. 3.

[7] Defendant's Answer and Affirmative Defenses to Plaintiff's Original Complaint and Original Counterclaims, p. 3.

[8] Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014, pp. 1 – 2.

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

techniques, and (f) other important business and economic considerations, I have evaluated the damages suffered by Conn as a result of Sherman's breach of the PSA.

15. I understand that Conn alleges that Sherman breached the PSA by failing to comply with its payment obligations for Delivery No. 3 and subsequent Delivery Nos. 4 – 12.[9] I have reviewed and analyzed account information for Conn's charged off accounts that were included in Delivery No. 3 and likely would have been included in Delivery Nos. 4 – 12 as defined in the PSA.[10] In **Table 1** and **Exhibit 4**, I have summarized:

   a. the number of charged off accounts included in Delivery Nos. 3 – 12 and associated account balances;[11]

   b. Sherman's associated payment obligation at the purchase price percentage specified in the PSA (i.e., 7.28% of aggregate account balances for all accounts other than those contained in the Bulk Delivery[12]);

   c. "purchase price adjustments" (described in detail below) for accounts in Delivery Nos. 3 – 12 that had unexpired extended warranty/repair service agreements (unexpired "RSAs") at the time they were charged off by Conn;

   d. the total amounts recovered by Conn through October 18, 2016 from servicing its charged off accounts subsequent to the charge off date; and

   e. the damages suffered by Conn as a result of Sherman's alleged breach of the PSA (i.e., the amount Sherman was obligated to pay under the PSA less (i) purchase price adjustments for unearned RSA and (ii) the amounts Conn recovered by servicing the charged off accounts subsequent to the charge off date).

---

[9] *See* Plaintiff's Original Complaint, pp. 3 – 4.

[10] Specifically, I reviewed and relied upon the following data files: "Debt Sale pulled 11.1_removed deceased deduped.xls" (account data for Delivery No. 3 sent to Sherman); "Debt Data 10-14 to 7-15 v6.1.xlsx" (account data for Delivery Nos. 4 – 12); "ChgOff11 2016.xlsx" (RSA data for Delivery No. 3 sent to Sherman); and "Chg off 10-14 to 7-15 CHGOFF11 RSA Data v1.0.xlsx" (RSA data for Delivery Nos. 4-12). I removed duplicate observations from the RSA data as part of my analysis. *See also* Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014, p. 2.

[11] The supplemental account data includes (a) 720 accounts identified as charged off in October 2014 that were not included in the account data for Delivery No. 3 that was sent to Sherman; and (b) one account identified as charged off in June 2015 that was included in the account data for the Bulk Delivery previously sent to Sherman. These 721 accounts are excluded from my analysis of Conn's damages.

[12] Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014, p. 3.

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

Table 1
Summary Of Conn's Damages
Resulting From Sherman's Alleged Breach Of The PSA[13]

| Delivery No. | Charge Off Month | No. of Accounts | Charged Off Account Balance | Purchase Price per PSA (7.28%) | Purchase Price Adjustment | Total Recovered by Conn | Conn's Damages |
|---|---|---|---|---|---|---|---|
| 3 | 10/2014 | 5,907 | $11,126,460 | $810,006 | $51,688 | $282,157 | $476,161 |
| 4 | 11/2014 | 8,572 | $18,355,875 | $1,336,308 | $92,073 | $601,949 | $642,286 |
| 5 | 12/2014 | 9,199 | $19,101,224 | $1,390,569 | $94,736 | $523,787 | $772,047 |
| 6 | 1/2015 | 9,382 | $18,684,694 | $1,360,246 | $92,889 | $584,032 | $683,325 |
| 7 | 2/2015 | 8,392 | $17,390,746 | $1,266,046 | $87,554 | $446,267 | $732,226 |
| 8 | 3/2015 | 9,304 | $19,088,888 | $1,389,671 | $94,635 | $337,240 | $957,796 |
| 9 | 4/2015 | 9,090 | $18,486,306 | $1,345,803 | $91,485 | $420,168 | $834,150 |
| Subtotal | | 59,846 | $122,234,192 | $8,898,649 | $605,060 | $3,195,598 | $5,097,991 |
| 10 | 5/2015 | 9,021 | $19,016,400 | $1,384,394 | $92,538 | $293,070 | $998,786 |
| 11 | 6/2015 | 8,702 | $18,337,936 | $1,335,002 | $89,415 | $349,278 | $896,309 |
| 12 | 7/2015 | 8,148 | $17,958,051 | $1,307,346 | $85,919 | $341,856 | $879,571 |
| Subtotal | | 25,871 | $55,312,387 | $4,026,742 | $267,872 | $984,203 | $2,774,667 |
| Total | | 85,717 | $177,546,579 | $12,925,391 | $872,932 | $4,179,802 | $7,872,657 |

16. As shown in **Table 1**, a total of 85,717 charged off accounts were and/or would have been included in Delivery Nos. 3 – 12 as defined in the PSA. The aggregate charged off account balance was $177,546,579. At the purchase price percentage of 7.28%, Sherman's total payment obligation associated with Delivery Nos. 3 – 12 would have been $12,925,391. (**Exhibit 4**.)

17. For accounts in Delivery Nos. 3 – 12 that had unexpired RSAs at the time they were charged off by Conn, I have calculated purchase price adjustments to remove the portion of Sherman's total payment obligation related to any unearned RSAs. I have determined the amount of the purchase price adjustments in the following manner. For each line of RSA that had an expiration date later than the date the account was charged off by Conn:

   a. the total purchase price of the RSA was divided by the number of days of coverage included in the agreement to determine a daily rate associated with the RSA;

---

[13] Totals may not tie due to rounding.

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

    b. the daily rate was multiplied by the number of days of coverage that were remaining at the time the account was charged off by Conn to determine the "unearned" portion of the RSA purchase price; and

    c. if the "unearned" portion of the RSA purchase price was at least $1 (or greater),[14] the "unearned" portion of the RSA purchase price was multiplied by Sherman's purchase price percentage (i.e., 7.28%) to determine the purchase price adjustment.

18. Following the procedure described above for each of the accounts in Delivery Nos. 3 – 12, the total amount of the purchase price adjustments for unearned RSA is $872,932.[15] (**Table 1** and **Exhibit 5**.)

19. I understand that subsequent to Sherman's alleged breach of the PSA, Conn began servicing its own charged off accounts and was able to recover payments on some of the same charged off accounts that would have been sold to Sherman under the PSA.[16] The total amount that Conn subsequently recovered by servicing the charged off accounts through August 31, 2016 was $4,179,802. (**Table 1** and **Exhibit 4**.) Conn's recovery of these payments is an offset to the claimed damages resulting from Sherman's alleged breach of the PSA.

20. The damages suffered by Conn as a result of Sherman's alleged breach of the PSA are calculated as: the amount Sherman was obligated to pay under the PSA less (a) purchase price adjustments for unearned RSA and (b) the amounts Conn recovered by servicing the charged off accounts subsequent to the charge off date. In the event that the trier of

---

[14] I understand that Conn was not required to refund (or credit back to the account) unearned RSA amounts of less than $1. (*See, e.g.*, Retail Installment Contract between Conn Appliances, Inc. and Christle H. Herrera dated February 2, 2012.) The aggregate purchase price adjustment relating to unearned RSA for Delivery Nos. 3 – 12 would increase by only $13 if unearned RSA amounts of less than $1 were included in the calculation. (*See* **Exhibit 5**.)

[15] If the purchase price adjustment were calculated based on RSA amounts from warranties sold on or after January 1, 2012 and which originated in Texas, the total purchase price adjustment for Delivery Nos. 3 – 12 would be $627,433. Because information regarding the state in which the loans originated is not available, I utilized the borrower's state of residency as a proxy for the state in which the loan originated. (*See* **Exhibit 5**.)

[16] Based upon a discussion with Mr. Clint Walton. *See also* Debt Data 10-14 to 7-15 v6.1.xlsx, column labeled "Total_Recoveries."

Supplemental Declaration of Bruce L. Blacker
November 9, 2016

fact determines Sherman was obligated under the PSA to purchase the charged off accounts in Delivery Nos. 3 – 12, the damages suffered by Conn as a result of Sherman's alleged breach of the PSA total $7,872,657.[17] (**Table 1** and **Exhibit 4**.)

21. Alternatively, in the event that trier of fact determines Sherman was obligated under the PSA to purchase only a subset of the remaining deliveries, **Table 1** and **Exhibit 4** also identify Conn's damages associated with each delivery on an individual basis. I understand that it is Conn's position that the PSA provided that no party could terminate the PSA prior to May 20, 2015 (i.e., until after the closing date for Delivery No. 9).[18] The damages suffered by Conn as a result of Sherman's alleged breach of the PSA related to Delivery Nos. 3 – 9 total $5,097,991.

\* \* \* \* \* \*

22. My analyses and opinions contained in this declaration are based upon information available to date. I reserve the ability to review documents, deposition transcripts, or other information still to be produced by the Parties to this dispute and to supplement my opinions based upon that review.

23. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2016.

*Bruce L. Blacker*
Bruce L. Blacker, CPA, CFF

---

[17] A reconciliation of Conn's damages as presented in the Blacker Declaration and Conn's damages as presented in this declaration is contained in **Exhibit 8**.

[18] *See* Plaintiff's Original Complaint, p. 3 and Purchase and Sale Agreement between Conn Credit I, LP and Sherman Originator III LLC dated September 15, 2014, pp. 15 – 16.

CONFIDENTIAL