# Exhibit 1

CONFIDENTIAL





ANALYSIS GROUP
ECONOMIC, FINANCIAL and STRATEGY CONSULTANTS

Main 1 214 523 1400   Fax 1 214 523 1401   www.analysisgroup.com

2911 Turtle Creek Boulevard   Suite 600   Dallas, TX   75219

## BRUCE L. BLACKER
### Vice President

Phone: (214) 523-1406
Fax: (214) 523-1401
bblacker@analysisgroup.com

Bruce L. Blacker has experience in litigation and dispute analysis, corporate recovery, business valuation, and tax compliance services.  Mr. Blacker has provided accounting, finance, and economic analyses in a variety of engagements.  His litigation consulting case experience includes antitrust, breach of contract, business interruption, forensic accounting, fraud investigations, intellectual property (copyright infringement, patent infringement, trade dress, trademark, trade secrets), lender liability, loss of earnings (wrongful death/wrongful termination), securities fraud, and general damage quantification matters.  Mr. Blacker has served as an arbitrator and has testified at trial and in deposition.

Mr. Blacker has a Masters and B.S. in Accounting from Brigham Young University and is a Certified Public Accountant licensed in the State of Texas and is certified in financial forensics (CFF).

## EDUCATION

1989          M.ACC., Brigham Young University, Provo, Utah

1989          B.S., Accounting, Brigham Young University, Provo, Utah

## PROFESSIONAL EXPERIENCE

2004 – Present   Analysis Group, Dallas, Texas - Vice President

1991 – 2004   PricewaterhouseCoopers LLP, Dallas, Texas – Partner, July 2003; Director, July 1999; Manager, July 1994; Senior Consultant, July 1992; Staff Consultant, January 1991.

1990          KPMG Peat Marwick, Dallas, Texas - Tax Specialist

1988 – 1989   Brigham Young University, Provo, Utah - Legal Research Assistant, 1988 to 1989; Teaching Assistant, 1988.

## PROFESSIONAL DESIGNATIONS AND BUSINESS AFFILIATIONS

Certified Public Accountant ("CPA"), State of Texas

Certified in Financial Forensics ("CFF")

American Institute of Certified Public Accountants
        Forensic and Valuation Services Section

Texas Society of Certified Public Accountants

Dallas Chapter of Texas Society of Certified Public Accountants

Participant in programs sponsored by the National Institute for Trial Advocacy

Dallas Fort Worth Management Society

Board of Directors, North Dallas Chamber of Commerce, 2001 - 2004

CONFIDENTIAL

## LITIGATION CONSULTING EXPERIENCE

### Arbitration and Settlement Proceedings

- Evaluated various automobile dealerships involved in arbitration with a major automobile manufacturer per the Consolidations Appropriations Act 2010 (H.R. 3288). The purpose of the arbitration was to determine which dealerships would be dealerships of the automobile manufacture post-bankruptcy and which dealerships would be terminated. In that regard, an analysis of the following factors was performed: (1) the dealership's profitability, (2) the dealership's current economic viability, (3) the manufactures business plan, (4) the dealership's performance related to objectives established in the dealership agreement, (5) demographics and geography of the dealership's market, (6) dealership's performance in relation to other dealership's, and (7) the dealership's length of experience. Dealerships were evaluated in Florida, Oregon, Tennessee, and Texas.

- Appointed by the court to perform as the arbitrator in a global settlement agreement to resolve a dispute between the estate of a deceased owner and the surviving owner/businesses in the oil and gas industry. Specifically, performed an accounting analysis of the books, records, and statements of accounts for four related entities. Analyzed all cash distributions, payments, and dividends of cash or other assets to determine whether such distributions were made in accordance with their respective ownership interests. Determined the adjustments that were required to bring the distributions into conformity with the owners respective ownerships interests.

- Assisted the arbiter in a purchase price dispute involving the determination of final net working capital related to the sale of a restaurant. Items in dispute included but were not limited to, the cut-off date, net tax benefit, net operating losses, contractor liens, accrued expenses, and bonuses.

- Provided litigation consulting services to an insurance company who sought to settle a dispute between their client, a major motion picture and television company, and a direct mail promotional company. The Plaintiff's alleged that the airing of three television shows by the Defendants caused the loss of customers and resulted in economic harm. The insurance company requested that I evaluate the Plaintiff's expert's reports on damages and the Defendant's (i.e., their client's) rebuttal expert report and provide an assessment of the strengths and weakness of the damages opinions rendered. The case settled after submitting a report of my findings.

### Antitrust

- Evaluated Plaintiff's claim that a national orthodontic trade association's advertising guidelines resulted in antitrust injury in the markets for orthodontic brackets and orthodontic services. Through empirical analysis concluded the advertising guidelines were lowered consumer search costs, promoted competition, and did not stifle innovation in the relevant markets. Performed quantitative analyses to demonstrate that legitimate advertising was not impacted by the advertising guidelines.

- Evaluated distributors' claims of past lost profits, future lost profits, and reductions in franchise value damages in a carbonated soft drink antitrust litigation. Plaintiffs were alleging Defendants entered into a series of anti-competitive marketing agreements with retailers relative to the distribution, marketing, advertising, promotion, and sale of national brand carbonated beverages. Analysis demonstrated Plaintiff's expert did not take into account the brand composition of Plaintiff's case sales, underestimated variable costs of distribution, did not adjust for increased competition from private-label brands and other drinks, and failed to account for the lack of advertising and other promotional support from distributor's parent company.

CONFIDENTIAL

- Critiqued the Plaintiff's damage model in an alleged tying case dealing with automotive CAD/CAM design software and mainframe timesharing. Analyzed the total size of the market, CAD/CAM timesharing competitors, the likelihood of new entry into the market, and the Plaintiff's market share in an alleged unfettered market.

- Analyzed the fast food point-of-sale ("POS") equipment and software industry in an alleged antitrust tying case. Issues investigated included the number of competitors, price competition, non-price competition, ease of entry, and the relative market shares of fast food POS equipment manufacturers.

- Provided litigation assistance to the Plaintiff's counsel in an antitrust lawsuit against a major manufacturer of high-speed laser printers and copiers. Developed a model to calculate the damages to 16 equipment leasing partnerships arising from antitrust practices.

**Breach of Contract**

- Analyzed damages in a breach of contract matter for a company in the business of designing, producing, and deploying its proprietary high-speed data network system in healthcare facilities. Plaintiff claimed that delay in delivery and defective products caused a delay in installations and damages. Monetary damages evaluated included delay damages and damages related to increased expenses.

- Quantified the royalty payments owed by the patent holder in a breach of contract dispute involving call processing and fraud control software technologies used in the corrections industry related to telecommunications services. Issues in the case included failure to pay royalties, failure to make royalty reports, failure to keep accurate books and records, and failure to comply with audit obligations. Analyses included a determination of the number of phone lines in service (each month) in various prisons and correctional facilities, the identification of equipment taken out of service and placed in inventory, and calculation of the claimed royalty payments due.

- Evaluated the developer/franchisee's claimed damages related to a major sandwich franchisor's alleged breach of a five-state area development agreement. Reviewed the area development agreement. Analyzed revenues, costs and profitability associated with each franchise store and estimated the Claimant's lost development fees (lost franchise fees and lost royalty fees) based on various scenarios contemplated by the Parties.

- Evaluated Plaintiff's breach of contract damages claim relating to an exclusive license to distributor aircraft turbochargers and parts. Calculated lost turbochargers sales using a market share approach. Lost profits were calculated on both lost turbochargers sales and lost part sales.

- Assisted a group of radiology physicians in assessing whether a management company was appropriately accounting for account receivable reserves under the terms of their service agreement. Performed an analysis to understand how the management company accounted for account receivable reserves. Analyzed the reserve methodology utilized by the management and compared their methodology to both industry standards and generally accepted accounting principles. Determined the amount of inadequate reserves and analyzed the effect on the calculations on the buy-out of two physicians.

- Evaluated Plaintiff's claimed damages in a breach of contract matter the telecommunications industry. Specifically, the dispute related to marketing services performed on behalf of a long distance carrier to soliciting residential and business customers in Mexico during the "Equal Access Program" (i.e., the break up of Mexican telephone monopoly) and the fees due for such services. Analyses included the evaluation of Plaintiff's claimed lost commission profits, lost commission buyout, and destruction of business value. Also, calculated and an alternative damages amount.

- Provided litigation consulting services in a breach of contract matter in the telecommunications industry related to an interconnection agreement. Specifically, the dispute arose over an incumbent local exchange carrier's ("ILEC") refusal to supply unbundled network elements ("UNE") and other services to a major metropolitan city to make the city a fully operationally telecommunications network. Issues analyzed included: lost revenues, lost savings, actual damages for equipment purchase, and litigation activities.

- Evaluated Plaintiffs' claimed damages in a breach of contract matter involving the aborted sale of assisted living facilities. Analyzed current trends in the assisted living industry, the financial condition of the target company, the projected financial results of certain to-be-constructed properties, and the target company's performance related to projections. Also at issue was whether a material adverse change had occurred in the target company's operations and business. Lost profit, interest-related damages, lost fees, and diminution-in-value damages were evaluated.

- Quantified damages on behalf of an information technology firm alleging a recruiting firm breached its contract to fulfill its executive search obligations. Lost profits where calculated under a delayed theory that their hiring strategies were postponed due to the breach. Analysis included an assessment of expected vs. delayed revenues and the associated incremental costs and profits.

- Provided litigation consulting services in a dispute between a management services organization ("MSO") for physicians and an integrated Management Information System ("MIS") provider. The MSO alleged that the MIS provider made misrepresentations and breached the service contract which lead to alleged poor collections of physician billings, which lead to alleged critically low cash flow, and ultimately resulted in the failure of the MSO. The MIS filed a counterclaim alleging that it had sustained damages the MSO's misrepresentations and breach of contract. Quantified damages for the MIS company under a benefit-of-the-bargain approach and an out-of-pocket approach. Evaluated the MSO's claims and illustrated that the MSO's business failure was due to its inability to reduce physician costs, corporate overhead, lack of capitalization, and a financially flawed business model. Additionally, demonstrated that the MSO's business model was unattractive to prospective physicians compared to other models and that its business plan contained unreasonable assumptions.

- Evaluated Plaintiff's damages claim relating to a NASCAR racing team's sponsorship agreement. Plaintiff alleged the sponsor, an Internet service provider, interfered with the NASCAR team's ability to sell advertising banners that were part of the sponsorship agreement. Assessed the Plaintiff's damages methodology and calculations. Analyzed the appropriate methodology for valuing a NASCAR race team and assessing comparable transactions. Additionally, assessed the financial performance of the racing team and the risks associated with a barter arrangement.

- Calculated damages sustained by the Plaintiff as the result of the Defendants breaching the supply agreement for roofing granules used in the manufacturing of roofing shingles. Analyzed the granule requirements of the Defendant and the capacity of the Plaintiff to meet those requirements. Performed a lost profit analysis. The lost profit analysis included assessing prompt payment discounts, freight equalization charges, incremental manufacturing costs, and transportation allowances or credits. Additionally, evaluated the Defendant's counterclaim for damages alleging a breach of contract relating to its pricing practices (i.e., "favored nations" clause). Evaluated the Defendant's claimed damage period and the methodology used to estimate a discount from list price in the absence of the Plaintiff's alleged treatment of pricing issues. Evaluated the Defendant's regression analysis and identified for counsel the methodological errors contained in the Defendant's claim.

CONFIDENTIAL

- Evaluated the Plaintiffs' claimed damages in a breach or contract / breach of warranty case in the grocery salvage industry. The Plaintiffs' alleged they lost their brokerage license and were put out of business as a result of the sale of contaminated goods by the Defendants. Specifically, the Plaintiffs claimed lost personal income, lost inventory, and the lost value of the business as damages.

- Assisted a hospital in evaluating its participation in a Shareholder Contribution Agreement among and between various other hospitals and certain managed healthcare plans. Specifically, evaluated the amount assessed the hospital under the agreement relating to Medicare, Medicaid, and commercially managed healthcare plans. Also, assessed the financial impact to the hospital under various potential exit strategies from the agreement.

- Evaluated Plaintiff's damages claim arising from the alleged failure of a call center to properly process inquiries relating to the sales of a collectible doll. The figurine was that of a recently deceased public figure. Analyses included advertising expenditures, response rates across cities, major news announcements related to the marketing of such merchandise, and contributing problems caused by Plaintiff's actions. Employed a before-and-after approach to estimate damages by comparing sales in an unimpacted period with sales in the alleged impacted period.

- Evaluated the Plaintiff's claimed damages in a breach of contract/failed initial public offering ("IPO") case in the temporary staffing and professional employer organization ("PEO") services industry. At issue was the underwriter's ability to price and close the IPO in light of the "book" for the transaction and the stock's price performance in the aftermarket had the IPO been consummated. Evaluated the Plaintiff's damages claim, including the projected post-IPO stock price, profitability of certain aspects of the business, ownership percentages in the company, and how the proceeds would have been shared between the owners of the consolidating private companies.

- Critiqued the lost profit claim of a rural water district against a city in a breach of contract dispute involving the supply of water to an industrial park. Analyzed the water usage of the industrial park's tenants, the city's public works accounting records, and various contracts relating to the supply of and payment for water to the industrial park.

- Analyzed the Plaintiff's damages claim in a breach of contract dispute involving extremely low frequency ("ELF") electro-magnetic radiation protection system ("RPS") for video display terminals. At issue was the likely market penetration rate of a newly introduced RPS add-on device given declining monitor prices and compliance with radiation standards for monitors. Prepared an expert witness report and trial exhibits.

- Evaluated damages in a breach of contract claim between a television shopping network and a local television station. At issue were the lost profits to the television shopping network when the local television station discontinued broadcasting the retailer's programming.

- Performed a solvency analysis in a breach of contract dispute between a clinic and a doctor. The matter was ultimately resolved through arbitration.

- Calculated damages in a breach of contract lawsuit between two major semiconductor manufacturers. Analyzed the historical and projected trends of the semiconductor industry specifically focusing on the life cycle of semiconductor chips from current technology to obsolescence. Performed a competitor analysis. Critiqued the opposing side's damage model.

- Provided consulting services to the Defendant, during settlement negotiations, in a breach of contract lawsuit relating to lease agreements for heavy equipment used in a gunite business. Critiqued the opposing expert's damage model.

- Calculated damages in a breach of contract lawsuit relating to the sale of accidental death and dismemberment insurance policies.

- Quantified damages in a breach of contract lawsuit involving an insurance company and a non-compete agreement. Analyzed premiums, loss ratios, expense ratios, and investment returns relating to property and casualty insurance policies.

- Reviewed the financial operations of an oil and gas jobber in a breach of contract lawsuit. The jobber alleged that the fuel manufacturer diminished his business through direct competition of newly opened and owned retail stores. Performed a market analysis to determine if the retail owned outlets affected the jobber's business.

- Analyzed an opposing expert's damage model and developed an alternative damage model in a breach of contract litigation matter.

**Business Interruption**

- Calculated lost profits suffered by a major amusement park due to the Defendant's, a ride manufacture, alleged wrongful conduct which resulted in an accident and death of a patron. Analyses included; lost attendance, lost ticket revenue, lost in-park revenue, incremental costs, and evaluated alternative reasons for declines in attendance. Damages were calculated using both a before-and-after and a benchmark approach.

- Evaluated the damages sustained by a cosmetic company as the result of defective decorative glass containers being furnished for its new therapy products. Evaluated and/or verified product retrieval costs, retrieval program administration costs, customer goodwill, replacement gift costs, waste disposal costs, and lost profits on the therapy products. The lost profit analysis included assessing the life cycle sales pattern of new cosmetic products introduced by the company.

- Evaluated Plaintiff's claimed damages from a lost bid to retrofit a refinery in Pakistan. Analyzed Plaintiff's allegations that Defendants made untrue statements to the bid evaluation team concerning Plaintiff's net worth, working capital, and profitability trends. Evaluated Plaintiff's claimed damages using as a benchmark prior engineering projects completed by Plaintiff.

- Evaluated Plaintiffs' damages claim relating to the installation of an allegedly defective computer software system at an automobile dealership. Plaintiffs contended the software had defects adversely affecting the accounting system and day-to-day operations of the dealership, and submitted an "increased cost" damages claim. Analysis demonstrated Plaintiffs' expert used an inappropriate methodology for measuring damages and submitted cost increases unrelated to the allegedly defective software.

- Evaluated the Plaintiff's lost profit calculations in a condemnation/business interruption lawsuit between a tree nursery business and a state. The Plaintiff alleged that the state's highway construction impeded access to the Plaintiff's business and caused damages in the form of lost profits and additional expenses. Critiqued Plaintiff's damage model, prepared an expert witness report, and created trial demonstratives.

**Commercial Litigation**

- Evaluated the impact on the sales of a major manufacturer and marketer's pork breakfast products line because of the use of an unauthorized personal guarantee printed on the packaging. Plaintiff claimed that the manufacture had benefited from the unauthorized use of the guarantee. After evaluating other factors that could impact sales (e.g., sow prices, seasonality trends, etc), determined that Plaintiff's claim could not be supported or causally connected to the personal guarantee.

- Evaluated Plaintiffs' claims for approximately $1 billion relating to a prior settlement of claims for plumbing failures allegedly caused by leaks in plastic plumbing systems manufactured and sold during the 1970's. During the 1980's, claims of leaks in polybutylene plumbing systems began and resulted in several class action lawsuits. The Defendant (in this matter) filed for bankruptcy when these class actions were being brought and the Plaintiffs (in this matter) continued to control the claims resolution process under the terms negotiated in those class actions. When the Defendant emerged from bankruptcy, the Plaintiffs sought recovery from the Defendant for a portion of the claims paid related to the earlier class actions. Over the course of the claims administration process, nearly 900,000 claims were made, over 2 million leaks identified and inspected, and approximately 1.6 million checks disbursed for repair and replacement of plumbing systems. Assignment: evaluated the large databases relied on by the Plaintiffs to determine if the data was complete and reliable for purposes of evaluating economic damages. Shortly after the exchange of expert witness reports, rebuttal reports, and the deposition of Plaintiffs' expert witness, the case settled very favorably for the Defendants.

**Environmental**

- Analyzed a complex real estate transaction in an environmental contamination lawsuit against a major oil company. Designed the graphic presentation used to explain the transaction during trial.

**Executive Compensation**

- Provided litigation consulting services in a dispute over an executive's severance package for a major competitive local exchange carrier ("CLEC"). The dispute centered on whether the executive qualified for the severance package and the value of the various severance package components. Analyzed the CLEC industry both historically and based on analyst forecasts. Also evaluated the Plaintiff's calculations of the basic severance package including benefits, stock options, and other incentive plans.

**Forensic Accounting/Fraud/Investigations**

- Performed certain procedures in assisting a hospital with the investigation of a hotline report which alleged various issues concerning the materials management department including, but not limited to, falsifying inventory reports. Investigation included analysis of financial documents and conducting interviews.

- Assisted counsel in a health care criminal matter in which a group of doctors and a hospital were alleged to have conspired to receive remuneration in return for medical-eligible patient referrals. Analyzed the various medical labs to determine utilization rates and profitability. Quantified the value of reduced admission rates of patients and the reduced average length of time that a patient stays in geriatrics due to the services provided by the doctor group.

- Analyzed the return performance of a pension plan in a mismanagement lawsuit against the trustee. This included researching the historical performances of comparable mutual funds, calculating the returns of individual investors in the pension plans and comparing the returns to funds with the same investment objective to determine damages.

- Performed extensive financial analyses on several publicly traded day-care centers to determine the financial position and market value of a day-care center in relation to a negligence lawsuit. Designed the graphic presentations used at trial.

- Reviewed numerous private deferred annuity trusts for a litigation matter relating to distributions.

- Reviewed the financial records and bank statements of a manufacturing company that defaulted on a loan where the bank considered foreclosure actions.

- Prepared an exception report for a large real estate management company. Included analyzing numerous residential, commercial and mini-storage properties to develop financial tests used to identify properties with the potential for fraud and/or mismanagement.

- Performed a forensic investigation for a major airline company to determine the use of insurance proceeds by the family of a crash victim.

- Performed a forensic investigation on behalf of a lender to determine if assets existed that could support the value of a real estate developer's loan guarantee.

## Intellectual Property: Patent Infringement

- Analyzed Plaintiff's lost profit and reasonable royalty damages in a patent infringement matter related to spinning wing decoy products used by sportsman. Two patents were at issue where the inventions related to animated waterfowl decoys and game decoys with high speed rotating strobe wings. Lost profits were calculated using the Panduit factors and a market share approach using Mor-Flow as guidance. Reasonable royalties were calculated on sales for which lost profits were not being claimed. Plaintiffs were also alleging a false marking claim against the Defendant. Evaluated the possible number of false marking offenses based on sales data.

- Evaluated Plaintiff's claimed royalty damages in a patent infringement matter against a major movie and video rental company. The technology at issue related to a claimed invention for limiting the use of down loaded video on demand data applicable to video on demand rentals. Identified flaws in the Plaintiff's Georgia-Pacific analysis and performed an independent Georgia-Pacific analysis. Concluded that Plaintiff's analysis had failed to consider, among other things, (a) that no royalties were ever paid on the claimed established royalty rate, (b) the lack of competition between the parties, (c) the patent holder's inability to market the claimed invention, and (d) the resources and know how available to the Defendant to commercialize the invention. These considerations placed significant downward pressure on the claimed royalty rate.

CONFIDENTIAL

- Analyzed Plaintiff's lost profit and reasonable royalty damages in a patent infringement matter related to three-way call detect and call blocking technologies used in telecommunications services at corrections facilities. Evaluated Plaintiff's lost profits using as guidance the Panduit factors. Determined the number of phone lines to correctional facilities that were lost sales to the Plaintiff and then quantified lost profits. Calculated royalties on the infringing lines at correctional facilities for which lost profits were not claimed. Analyzed the Georgia-Pacific factors, constructed a hypothetical negotiation framework to determine the royalty rate, and quantified the royalty base. Evaluated Plaintiff's damages based on various scenarios of potential findings of infringement - - there were four patents at issue in this matter.

- Evaluated Plaintiff's claimed compensatory damages in a patent infringement matter involving a method and apparatus for allowing a potential automobile purchaser to create and submit a purchase request over a computer network. Plaintiff and Defendant compete as web-based companies in the sales lead generation industry where potential buyers of automobiles are identified and then those buyer leads are sold to automobile dealers. Evaluated Plaintiff's claimed lost profits using a Panduit analysis and industry market share data. Also, evaluated Plaintiff's claimed reasonable royalty, increased cost, and price erosion damages.

- Evaluated the Plaintiff's claim against five Defendants in a patent infringement matter involving certain traffic management methodologies capable of implementation in Asynchronous Transfer Mode ("ATM") telecommunications switching systems. Issues in the case included the use of the entire market value rule, availability of non-infringing alternatives, and the negotiating positions of the various Parties in hypothetical negotiation construct. Performed a Georgia-Pacific Factors analysis and provided alternative reasonable royalty damages.

- Analyzed claimed damages in a patent infringement matter brought by the inventor against a major designer and marketer of technology-based educations products. Five patents were at issue related to hardware and/or software products. Analyzed the Georgia-Pacific factors, conducted market and industry research, and compiled an accused product sales database. Calculated royalty damages under numerous scenarios by considering the impact on the hypothetical negotiation date, negotiating positions of the Parties, and products covered by the patents based on under various potential findings of infringement.

- Analyzed Plaintiff's lost profits and reasonable royalty damages in a patent infringement matter relating to scanning, counting, and counterfeit detection technologies in currency discriminators. With respect to Plaintiff's lost profits-related damages, performed incremental profit analyses on lost unit sales and ancillary sales. Evaluated Plaintiff's reasonable royalty-related damages. Developed a computer model to evaluated damages under a variety of scenarios based upon potential findings of infringement on patents and claims contained in these patents.

- Evaluated claimed royalty damages against a nutritional supplement company in a patent infringement matter. The technology at issue related to hydrosoluble organic salts of creatine and methods for enhancing muscle performance and recovery from fatigue. Analyzed the Plaintiff's expert's hypothetical negotiation framework, considered the availability of non-infringing methods and compositions, and identified inconsistencies in between Plaintiff's royalty rate and licensing evidence.

CONFIDENTIAL

- Critiqued the Plaintiff's claimed economic damages in a patent infringement matter involving technology related to liquid crystal displays ("LCD") (i.e., TVs, Computers, and portable DVD players). Specifically, the Patents at issue related to two categories of technology: DC to AC converter technology and phased burst mode technology. Alleged infringing products include notebook computer panels, notebook computers, LCD panels, LCD TVs and monitors, and portable DVD players with the patented technology residing on inverter controller integrated circuits used in conjunction with cold cathode florescence lamps ("CCFL"). Evaluated claimed royalty damages as presented by Plaintiff's expert through a report, deposition, supplemental report, and trial testimony. Identified conceptual inconsistencies in Plaintiffs claimed royalty rate when analyzing the claimed royalty rate across time periods and products. Also, addressed issues of royalty stacking, multiple patents, hypothetical negotiations, etc.

- Evaluated the Plaintiff's claimed damages in patent infringement matter involving on-line PINless debt bill payment processing. Specifically, Plaintiff's claimed lost profit and reasonable royalty damages related to PINless debt transactions initiated by consumers using interactive voice recognition (IVR). Evaluated the impact on the alleged infringing transactions of the parties' different business models, customer preferences, and non-infringing substitutes. Performed an incremental profit analysis. Evaluated the claimed reasonable royalty rate, base, and damages. Computed alleged damages using a reasonable royalty approach.

- Evaluated Plaintiff's claimed damages in a patent infringement matter dealing with non-reusable protective safety syringes. Specifically, the patent related to the syringe mechanism which, when the plunger on a syringe is fully depressed, causes the needle to retract into a cavity in the plunger. Analyzed other competitors offering a retractable syringe and the Parties' products; distribution capabilities; relative pricing structures; manufacturing capacity, and incremental costs. Calculated damages utilizing both a lost profits approach and a reasonable royalty approach.

- Evaluated the Plaintiff's claimed damages in a patent infringement matter involving six patents related to the Plaintiff's communications networking systems and technology. Also, computed damages related to the Defendants counterclaim that the Plaintiffs were infringing seven of the Defendant's patents relating to its communications networking systems and technology. Specifically, the technology at issue involved multiservice optical switches and the multiplexing protocols for transferring multiple digital bit streams using lasers or light-emitting diodes (LEDs) over the same optical fiber [Synchronous Optical networking (SONET) and Synchronous Digital Hierarchy (SDH)]. Evaluated the Plaintiff's damages model. Prepared a damages model to quantify the alleged damages related to the Defendants counterclaim. After the issuance of expert reports and depositions, the case settled and the parties entered into a long-term patent cross-license agreement.

- Assessed damages resulting from the alleged infringement of three patents related to home lighting controls. Quantified damages utilizing both a lost profits approach (on both accused products and ancillary sales) and a reasonable royalty approach. Determined the royalty rate appropriate to this instance based on the bargaining positions of the parties in a hypothetical negotiation and guidance as provided by the 15 Georgia-Pacific factors. Issues in the matter included properly identifying and classifying accused products and systems based on the assert claims and developing a damages model that would calculate damage for all possible liability outcomes (infringement of 1, 2, or all 3 patents).

- Computed reasonable royalty damages in a patent infringement matter involving technology related to an optical projector in a head-up guidance system used in aircraft. Analyses included: determining (from the documents produced) the date of the alleged infringers first infringing sale, quantifying the Defendants' unit and dollar sales of the alleged infringing products during the claimed damages period, evaluating the Defendants' profitability associated with the alleged infringing products, providing this

data to the Plaintiff's reasonable royalty expert, and calculating Plaintiff's claimed reasonable royalty damages using the royalty base determined and the royalty rate as provided by the Plaintiff's reasonable royalty expert.

- Calculated the Plaintiff's claimed lost profit damages dealing with inbound routing of faxes over computer networks using direct inward dialing (typically known by the acronyms DID, DNIS, DDI, MSN). Performed the lost profits analysis utilizing a market share allocation methodology. Determined the market shares of the competitors in the intelligent fax board market in the United States, assessed Plaintiff's market share in the absence of Defendant's alleged infringement, and allocated the Defendant's unit sales to the Plaintiff, and determined whether additional constraints existed regarding the Plaintiff's increased sales in the absence of Defendant's alleged infringement by cross-checking whether Plaintiff had products comparable to that sold by Defendant, analyzing Plaintiff's and Defendant's relative prices, and analyzing Plaintiff's distribution coverage and manufacturing capacity. Additionally, evaluated the Defendant's cross-claim for reasonable royalty damages for the Plaintiff's alleged patent infringement of Defendant owned patents relating to the same technology.

- Analyzed and assessed the royalty damages claimed by the Plaintiff in a patent infringement matter against one of the world's largest Dynamic Random Access Memory ("DRAM") integrated circuits manufactures. The patented technology involved patents for the invention of a word line driver, a boosted voltage supply, and a high voltage boost word line supply charge pump regulator for a DRAM. Evaluated the Plaintiff's expert's damage model, identified errors in the royalty base, and assisted the Defendant's royalty rate / licensing expert in performing a George-Pacific factors analysis. Performed various reasonableness tests.

- Evaluated Plaintiff's claims of lost profit, price erosion, and royalty damages in a patent infringement matter relating to degradable films for covering landfills. Analyses demonstrated Plaintiff failed to rule out alternative reasons for the decline in sales, ignored Plaintiff's lack of cost competitiveness with competing technologies, inappropriately assumed Defendant would not have been in the market with a competing product, overstated price reduction damages by ignoring discounts granted by Plaintiff in the normal course of business, and overstated the appropriate royalty rate by ignoring industry licenses and Plaintiff's incremental profit rate.

- Computed damages in a patent infringement/trade secret matter in the entertainment lighting industry. Determined the Plaintiff's lost luminaire rentals by applying the Plaintiff's application share to the Defendant's sales and adjusting for inventory available at the time of the sale; rental utilization rates; capacity constraints; and dealer, distributor, and sub-distributor issues. Calculated lost profits on the lost luminaire rentals. Royalty calculations were performed on the Defendant's sales for which the Plaintiff would not have made an equivalent rental. Evaluated trade secret damages on one of the Plaintiff's luminaries. Prepared expert witness reports. Assisted counsel during mediation and settlement discussions.

- Quantified damages in a patent infringement case involving blasting hole drilling rigs. Performed a detailed analysis to determine which of the infringing rigs would have likely been made by the Plaintiff in the absence of the infringement (i.e., analyzed the comparability of rig models, geographical distribution, price, capacity, etc.). Calculated lost profit damages on those rigs determined to be lost rig sales. Also, analyzed parts sales and calculated damages relating to the lost parts sales associated with the lost rig sales. Additionally, for those infringing sales which were not considered to be a lost sale, calculated lost royalties damages.

- Calculated lost profit damages, lost royalties damages, and price erosion damages in a design patent case for a manufacturer of vending machines. At issue was a vending machine dispensing refrigerated and unrefrigerated foods.

- Calculated damages in a patent infringement lawsuit involving dispense system products. Performed a lost profits analysis, performed an incremental cost analysis, analyzed capacity issues, and reviewed royalty rates for the high technology industry for the patent owner. Critiqued the opposing side's expert report.


**Intellectual Property: Trade Secret**

- Provided litigation consulting services in a theft of trade secret matter dealing with terabit optical routers in the telecommunications industry. At issue was the alleged theft of trade secrets used by former Plaintiff employees who formed a start-up company to develop a terabit optical router. Researched the terabit optical router industry including analyzing competition, competing products, current and projected demand for terabit routers, and valuations for terabit router companies. Also computed damages under a reasonable royalty approach employing the Georgia Pacific factors.

- Provided litigation consulting services in a theft of trade secret matter dealing with next generation switching equipment in the telecommunications industry. At issue was the alleged theft of trade secrets when the Defendant firm hired nine employees of the Plaintiff firm. Evaluated the Plaintiff's damages, analyzed claimed inability to maintain its projected market share, the alleged accelerated entry of the Defendants firm into the next generation switching equipment market, disgorged measure of damages, and reasonable royalty measures of damages. Also, researched royalty rates in the telecommunications industry and investigated accounting and reporting issues surrounding the alleged intellectual property.

- Analyzed damages in a trade secrets case involving drilling bits. The allegation was that "anti-whirl" technology was stolen when a competitor firm hired certain employees. Created a database of the bits in dispute. Assisted counsel in settlement negotiations by determining lost revenues under various scenarios and assessing incremental profits.


**Intellectual Property: Copyright, Trade Dress, Trademark**

- Evaluated the Plaintiffs' claimed damages in a trademark infringement matter involving companies which specialize in industry-specific insurance programs and targeted temporary staffing and Professional Employer Organizations ("PEOs"). Plaintiffs' damages included a profit disgorgement claim and corrective advertising claim. Analysis indicated the lack of an economic causal link between the alleged wrongful conduct and the claimed damages. Attended trial and assisted counsel in preparation for cross examination of the Plaintiff's damages expert.

- Critiqued the Plaintiff's claimed economic damages in a trademark matter between two major hospitals. Plaintiffs alleged that the Defendants were infringing its trademark and engaging in unfair competition by allegedly creating confusion in the marketplace relating to the Defendant's pediatric healthcare facility. Specifically, evaluated the Plaintiff's claimed damages related to lost sales, corrective advertising, and lost royalties.

- Quantified the Plaintiff's claimed damages in a matter dealing with various computer circuit packs and telecommunication switches. Plaintiff's claimed four causes of action: copyright infringement, common law trademark infringement, violation of Section 43(a) of the Lanham Act, and unfair competition.

Specifically, evaluated the Defendant's unit sales and revenues of the accused products and calculated the Plaintiff's actual damages in the form of lost profits for various damage periods related to the various causes of action. Evaluated the impact of product availability and industry events.

- Evaluated claimed damages in trademark and trade dress infringement matter in the military loans industry (i.e., financial institutions specializing in making loans to military personnel). The Plaintiff claimed the trademark was infringed because the Defendants placed the Plaintiff's name in the meta tags of its website to misdirect potential customers who use internet search engines. The trade dress claim related to the look and feel of the various branch offices. Analyzed the incremental profitability of the Defendant's Internet loan business and critiqued the Plaintiff's corrective advertising claim.

- Calculated damages in a trade dress case involving corn dogs. Damages included disgorgement of Defendant's profits and actual damages sustained by Plaintiff's as a result of the Defendant's alleged wrongful activities, to the extent they were non-duplicative.

- Conducted a net profit analysis for one of the world's largest retailers in a copyright infringement lawsuit involving women's sleep shirts. Performed an expense allocation analysis and calculated the net profits from the sale of the shirts at issue.

**Intellectual Property: Royalty Audits, Licensing Negotiations, and Professional Malpractice**

- Conducted a royalty examination for a mobile communications device company involving subscriber equipment and infrastructure equipment. Analyzed quarterly royalty reports to identified exceptions to a royalty agreement. Investigated exceptions and obtained an understanding of why they occurred if they were allowed so that this information could be used in future license negotiations.

- Assisted a major company in the wireless innovations and mobile systems industry in the valuation of a patent. Identified and evaluated market comparables. Researched and quantified the potential royalty base using various units of measure including the number of subscribers, infrastructure equipment, and automatic cross-connection equipment (AXE) switching equipment.

- Evaluated claimed damages in a legal malpractice matter where the Plaintiff alleged the Defendants did not properly provide legal representation. Specifically, Plaintiffs' (shareholders) claimed legal counsel failed to conduct proper due diligence and draft a proper contract (purchase agreement) related to the sale of a company which specialized in children's oral care products (sculpted manual toothbrushes, sculpted battery powered toothbrushes, and toothpaste). Claimed damages were based on the allegation that the acquiring company interfered with the Plaintiff's business impeding performance that would have resulted in a high level of deferred compensation. Concluded that Plaintiff's failed to demonstrate an economic causal link between the alleged wrongful conduct and the claimed damages. Further, concluded that Plaintiff's had not quantified claimed damages with a reasonable degree of certainty.

- Conducted a royalty examination for a domestic company involving the sale of Hydroxylamine products by an international company. This royalty examination was prompted by the drop in overall product sales and by the disparity, identified by the domestic company, in price per gallon charged in Japan versus that charged in the U.S. and in Korea for royalty bearing products. Reviewed and tested the basis for the royalty reports including sales and deduction items.

- Assisted a large petroleum chemical company (the patent holder) in negotiating a licensing agreement regarding the chemicals and high polymers used in the manufacturing of certain plastic bottles. Evaluated market size; projected revenues, costs, and profits; discount rates, and the implied royalty rate.

- Evaluated Plaintiffs' claimed damages relating to an alleged failure by a law firm to properly file certain patent applications relating to a video processor recorder. Plaintiffs' business opportunities and licensing fees in the United States and Europe were allegedly lost due to the ensuing delays. Analyzed Plaintiffs' causation linkages to the claimed damages, length of the claimed damages period, forecasted units sold, forecasted market share, forecasted costs of production, and claimed licensing rate.

- Analyzed a license agreement between the patent holder and a manufacturer of polypropylene in a breach of contract lawsuit. Reviewed historical royalty payments, calculated estimated royalties based on various royalty rates, and calculated the implicit royalty rates of other license agreements.

- Critiqued the Plaintiff's expert's damage calculations in a lawsuit alleging the failure to protect a company's intellectual property through the proper prosecution of international patent applications. Specifically, this case involved an eye-correction surgical product used in the field of ophthalmology to treat presbyopia. Assisted counsel in discovery and settlement discussions.

## Lender Liability

- Evaluated the Plaintiff's damages claim in a breach of contract / lender liability matter in the long-term healthcare industry. Plaintiff's claimed that with the alleged line of credit they would have built and managed several assisted living facilities and avoid a merger. Plaintiff's claimed damages including: diminution of value, lost profits, market/contract interest rate differential, merger costs, loss of development fees, management fees, and loss of investment, among others. Evaluated Plaintiff's claim by analyzing trends in the assisted living industry, evaluating the financial condition of the Plaintiff to illustrate that it could not have met the proposed terms for funding, and analyzed the financial results to the Plaintiffs constructed facilitates. Other issues included "black-box" financing and "off-balance sheet" financing.

- Provided litigation assistance to Defendant's counsel in a lender liability/ breach of contract suit related to funding residential development loans. Evaluated the Plaintiff's damages claim, analyzed Plaintiff's five-year projections, performed lost profits analyses, and evaluated the shareholder's future value under various scenarios.

- Analyzed a Plaintiff's complex damage model which estimated past and future lost profits for a high technology training company in relation to a lender liability lawsuit. This included evaluation of assumptions and sensitivity testing.

## Securities Fraud

- Analyzed the Plaintiff's claimed damages in a securities law violation lawsuit against a global telecommunications company. Plaintiff's claimed damages resulted from an acquisition of the Plaintiff's company. Issues and analyses included employee stock options, the options to sell rather than pursue an initial public offering, lost wages, lost benefits, and an event study of alleged misrepresentations.

- Evaluated Plaintiffs' claimed damages related to a merger in the banking industry. At issue was whether material adverse changes regarding loan loss reserves had occurred but were not disclosed. Analyzed whether the complained of events were related to conditions and circumstances in the banking industry. Also analyzed the value of alternative offers for the target bank and the pre-merger volatility in the acquiring bank's stock price.

CONFIDENTIAL

- Evaluated Plaintiff's claim of damages in a shareholder suit in the wireless cable industry. Plaintiff alleged that the company artificially inflated its stock price by making false representations relating to the growth of the industry, its introduction of a new product, and expected international sales. Analyses demonstrated that the Plaintiff's expert had no justification for the dates of the damage period, that the comparable companies selected were not comparable, that the "value line" used by the Plaintiff was inappropriate, and lead to an overestimation of alleged damages. Analysis also included demonstrating that increases and subsequent decreases in the company's stock price related in part to a joint venture of regional telephone companies entering the wireless cable industry (an industry effect ignored by the plaintiff's expert) and other company-specific events unrelated to the allegations.

- Analyzed the stock price movement of a computer card developer and manufacturer in a class action shareholder's securities fraud case. Performed an event study, identified an appropriate peer group, constructed a damage model, and analyzed economy-wide, industry-specific, and company-specific factors impacting the company's stock price.

- Provided litigation assistance to counsel in their representation of a health care company involved in a securities litigation matter. The Plaintiffs alleged that the company failed to disclose the full scope of certain alleged fraudulent practices regarding its psychiatric facilities. Assisted counsel in understanding the Plaintiffs' damages model, performed an event study, analyzed class certification issues, and evaluated "corrective disclosures" to the market. Performed alternative damage calculations to assist counsel in settlement negotiations.

- Analyzed the stock price movement of an arts and crafts store in a class action shareholder's securities fraud case. Analyzed the stock/option transactions of the named Plaintiffs, performed an event study, developed a Plaintiff-style damage model, critiqued the Plaintiffs' damages report, and consulted with counsel regarding the strengths and weaknesses of the testifying expert's report.

- Analyzed the stock price movement of a life insurance company in a class action shareholder's securities fraud case. Performed an event study, determined an appropriate peer group, compared the company's actual stock price to its "true value" line, constructed a volume matrix to track ins-and-outs traders and retention shareholders, and calculated damages.

- Analyzed the stock price movement of a real estate company's common stock in a class action shareholder's securities fraud case. Analyses included the development of an appropriate peer group and the isolation of economy-wide, industry-specific, and company-specific factors impacting the company's stock price. Also, compared the company's actual stock price to its "true value" line, constructed a volume matrix to track ins-and-outs traders and retention shareholders, critiqued the Plaintiff's damage model, and calculated damages under Section 10b-5 claims.

- At the request of a company's Board of Directors, analyzed the stock price movement of a medical equipment manufacturing company's common stock subsequent to the company's findings of an internal investigation which revealed that net income and assets may have been overstated in previously reported periods. Developed a Plaintiff-style damage model. Calculated damages assuming a claim under Section 10b-5 of the Securities Act of 1933. Prepared a summary report of the analysis for the company's Board of Directors.

- Analyzed the stock price movement of a computer/networking company, at the request of a potential acquiring company, during a time period when public announcements were being made concerning new products, the company's dependence on a single large customer, acquisition rumors, and merger activity

in the industry. Analyses included performing an event study and identifying economy-wide, industry-specific, and company-specific factors that impacted the company's stock price.

- Analyzed the stock price movement of a biotechnology company's common stock in a shareholder's securities fraud case. Critiqued the Plaintiff's expert's damage report and model. Performed an event study, determined an appropriate peer group, compared the company's actual stock price to its "true value" line, constructed a volume matrix to track ins-and-outs traders and retention shareholders, and calculated damages under Section 11 and Section 12 claims.

## Wrongful Death / Wrongful Termination / Employment Issues

- Evaluated Plaintiff's claimed economic losses against a global financial services firm in a wrongful termination / discrimination matter. Specifically, the dispute involved the position of national underwriting and processing manager for multi-family lending. Evaluated Plaintiff's claimed past and future losses. Analyzed economic factors unrelated to the claimed wrongful conduct such as consolidation in the banking industry, the financial crisis, and the mortgage crisis. Illustrated the unreasonableness of Plaintiff's claimed losses in light of numerous unrelated economic factors which Plaintiff's had not considered or explained.

- Evaluated the Plaintiff's claimed damages against a county hospital in a wrongful termination/discrimination matter. Evaluated alleged past and future lost earnings, alleged lost future pension income, and the alleged value of lost health insurance under two scenarios presented by the Plaintiff: (1) Plaintiff would have remained in same position and (2) Plaintiff would have been promoted. Identified assumptions erroneously assumed by the Plaintiff's expert which were contrary to the facts of the case. Concluded that Plaintiff's expert utilized assumptions that were unsupported, failed to consider Plaintiff's replacement income, and failed to consider other likely employment scenarios given the facts and circumstances of this case. Assisted counsel during trial.

- Evaluated the Plaintiffs' claimed lost future earnings in a wrongful death matter involving a lumber yard worker. Issues investigated included consumption expenses, assumptions regarding future work, likely possibility of separation from the workforce, estimated pay increases, cost of living adjustments, and taxes.

- Evaluated the Claimant's damage analyses and conclusions in a wrongful termination claim involving a senior life insurance broker/branch manager. Issues investigated included the assessment of income in the absence of an alleged wrongful termination, the assessment of income given the fact that termination did occur, an analysis of the expected work life of the Claimant, fringe benefits, and business expenses.

- Evaluated the lost earnings of a manager of an over-the-counter trading department in an alleged wrongful termination action. Since the manager's compensation was based on the profitability of the department, the performance of the department pre- and post-termination was investigated relative to the performance of the manager's new employer.

- Performed extensive financial analysis on several publicly-traded psychiatric hospitals to determine the financial position and market value of a psychiatric hospital in a wrongful termination lawsuit.

- Analyzed a complex employment agreement between a mining company and its CEO. Developed a micro-computer model to compute the company's cost under various scenarios of action regarding CEO.

CONFIDENTIAL

## CORPORATE RECOVERY EXPERIENCE

- Analyzed the expected rate of return on a portfolio of assets being held to meet future pension plan obligations.  Analyses included determining what investments would be included in a prudent fund manager portfolio and the historical risk premiums on each investment category.

- Performed preference payment, fraudulent conveyance and reclamation claim analyses for a major distributor of over-the-counter and prescription drugs in relation to a large-scale bankruptcy of a discount drugstore chain.

- Reviewed the restructuring plan of a major jewelry retailer in a large-scale bankruptcy.  Analyzed the projected operating expenses for a bank group who was considering debtor-in-possession financing.

- Analyzed a debtor-in-possession's financial projections on an unconsolidated and consolidated basis, performed a preference and fraudulent conveyance analysis, and assisted in the preparation of a Plan of Reorganization for the Official Unsecured Creditors Committee in relation to a large-scale bankruptcy proceeding of a major bus carrier.

- Prepared a cash flow model, analyzed the viability of projected business plans, reviewed management and accounting controls, and monitored cash transactions and inventory for a major creditor of a manufacturer of cash control devices and electronic monitoring systems.

- Assisted and advised in a creditor foreclosing on the assets of a manufacturer of security products and petroleum equipment.

- Computed and analyzed distributions by creditor class in a large-scale bankruptcy of a financial corporation.

- Performed extensive financial and valuation analysis for a major provider of psychiatric and rehabilitation services and its subsidiaries in a large-scale bankruptcy.

- Developed a cash flow model for a major international commercial real estate management corporation to calculate the value of numerous properties based on projected cash flows.

- Researched industry forecasts and performed extensive financial analyses on several public and private companies to determine the fair market value of a 100 percent ownership interest in a manufacturing company.

## BUSINESS VALUATION EXPERIENCE

- Developed a cash flow model to calculate the value of a home health care corporation and its subsidiaries.  The model was used in the negotiation process to sell two of the subsidiaries.

- Analyzed a psychiatric hospital valuation, which included reviewing the company's financial and operational records and researching economic forecasts to determine the appropriateness of the methodology employed.

- Performed extensive financial analysis on several public and private fast food restaurants to determine the fair market value of a 100 percent ownership interest in a privately owned pizza restaurant chain.

CONFIDENTIAL

- Conducted extensive financial analyses on several public and private steel pipe and tube distributors to determine valuation multiples and capitalization rates.

- Performed financial and valuation analyses on a privately-owned fast food distributing company. Researched industry compensation standards and analyzed the owner's historical compensation.

## TAX EXPERIENCE

- Researched complex business transactions to determine the consequences relating to mergers and acquisitions, spin-offs, forgiveness of debt, etc.

- Researched international tax issues and prepared international tax returns.

- Prepared corporate, consolidated, S-corporation, partnership, and individual tax returns.

CONFIDENTIAL

# Exhibit 2

CONFIDENTIAL

# BRUCE L. BLACKER

## TRIAL TESTIMONY EXPERIENCE

- **Texas Capital Bank, N.A.** v. Dallas Roadster, Ltd., IEDA Enterprise, Inc., Bahman Khobahy, and Bahman Hafezamini (US District Court for the Eastern District of Texas, Sherman Division)(2015)

- **Dynomax Drilling Tools Inc. and Dynomax Drilling Tolls USA Inc.** v. Duradril, LLC, Rigminder, Inc., Aleutian Yachts, LLC, Citadel Marine Center, LLC, Gregory A. Ward and Pamela Ward (District Court for Harris County, TX)(2014)

- ALPS South, LLC v. **The Ohio Willow Wood Company** (US District Court for the Middle District of Florida, Tampa Division)(2012)

- Bert Ogden Harlingen Motors, Inc. v. **Chrysler Group LLC** (American Arbitration Association Case No. 70-532-000086-10) (2010)

- Sexton Chevrolet Cadillac, Inc. v. **Chrysler Group LLC** (American Arbitration Association Case No. 30-532-00078-10) (2010)

- El Dorado Motors, Inc. v. **Chrysler Group LLC** (American Arbitration Association Case No. 71-532-000094-10) (2010)

- **U.S. Bank for the Estate of Vearl Sneed, et al.** v. Reef Exploration, Inc., et al. (Probate Court of Dallas County, Texas)(2002)

- Pioneer Financial Services Inc., et al., v. **Omni Loan Co. Ltd.** (US District Court for the Western District of Missouri, Kansas City Division) (2001)

- **The State of Texas** v. J. Grady Brown, Jr., et al. (County Court at Law No. Three of Denton County, Texas)(1997)

## DEPOSITION TESTIMONY

- **Micro Systems Engineering, Inc.** v. Universal Instruments Corporation (In the United States District Court for the Northern District of New York – Civil Action No. 3-13-cv-01144-TJM-DEP)(2016)

- MyKey Technology Inc. v. Data Protection Solutions by Arco; **CRU Acquisitions Group LLC**; **CRU-DataPort LLC**; Digital Intelligence, Inc.; Diskology, Inc.; Guidance Software, Inc.; Guidance Tableau LLC; Ji2, Inc.; MultiMedia Effects, Inc.; Voom Technologies, Inc.; and YEC Co. Ltd. (In the United States District Court for the District of Delaware – Civil Action No. 1-11-cv-00444-LDD)(2016)

- **Gerald W. Marleau** v. Rounds of Fun, Ltd., d/b/a Zone Action Park, JMATS, Inc., Joe G. Heath, Michelle Heath, and Michael K. Nicol (In The District Court, 158th Judicial District, Denton County, Texas – Cause No. 14-06192-158)(2016)

- Jeffery D. Morton v. **Sandra Wood** (In The District Court, 417th Judicial District, Collin County, Texas – Cause No. 417-02447-2013)(2016)

- Patricia Hughes v. **Desoto Surgicare Partners, Ltd., Texas Health Ventures Group, LLC and United Surgical Partners International, Inc.** (In The District Court, 193rd Judicial District, Dallas County, Texas – Cause No. DC-13-02334-L)(2015)

- In Re: Life Partners, Inc. Litigation (MDL NO. 13-.0357) (Bellwether Plaintiffs v. **Life Partners, Inc., Life Partners Holdings, Inc., Brian D. Pardo, R. Scott Peden, and Pardo Family Holdings, LTD aka Pardo Family Trust**)(In the District Court, 191st Judicial District, Dallas County, Texas – Cause No. DC-11-10639)(2014)

- TMI Products, Inc. v. **Rosen Entertainment Systems, L.P.** (In the United States District Court for the Central District of California, Western Division – Civil Action No. 5:12-cv-02263-RGK-SP)(2014)

- Sean T. Tumbow and Masako H. Tumbow, on behalf of themselves and all others similarly situated **v. Life Partners, Inc. and Life Partners Holdings, Inc.** (In the United States District Court for the Northern District of Texas, Dallas Division – Civil Action No. 3-11-cv-01030-M)(2012)

- **The Ohio Willow Wood Company** v. Alps South, LLC (In The United States District Court For the Southern District of Ohio, Eastern Division – Civil Action No. C2-04-1223)(2012)

- Miller Global Properties, LLC, Miller Global Fund V, LLC, SA Real Estate, LLLP, and SA Resort LLLP v. **Marriott International, Inc. and Marriott Hotel Services, Inc.** (In The District Court of Collin County, Texas, 219th Judicial District – Cause No. 219-03327-2009)(2011)

- Leanne Siri v. **The City of Dallas, Dallas City Manager Mary Suhm, Individually; Dallas Assistant City Manager Ryan Evans, Individually, and Dallas Fire-Rescue Chief Eddie Burns, Sr., Individually** (In the United States District Court for the Northern District of Texas, Dallas Division – Civil Action No. 3:10CV0036-M)(2011)

- Alps South, LLC v. **The Ohio Willow Wood Company** (In The United States District Court For the Middle District of Florida, Tampa Division – Civil Action No. 8:08-CIV-1893-T-33MAP)(2011 and 2010)

- Susan Harrison, et al. v. **The Procter & Gamble Company; Taft, Stettinius, & Hollister LLP; and Thomas E. Grossman** (In The United States District Court For the Northern District of Texas, Wichita Falls Division)(2008)

- BMC Resources, Inc. v. **Paymentech, LP** (In the United States District Court for the Northern District of Texas, Dallas Division – Civil Action No. 3:03CV1927)(2005)

- **Siemen Information and Communication Networks, Inc.** v. Inter-Commercial Business Systems, Inc. (In the United States District Court for the Northern District of Texas, Dallas Division- Civil Action No. 3-03CV2171-L)(2005)

- Jerry L. Cartwright as Administrator of the Estate of Valeria H. Cartwright and Jerry L. Cartwright and Vallie J. Cartwright, Individually as survivors, and as next friend of Dana Blunt, minor child of Valeria H. Cartwright, Deceased, Monica Davis, Dewayne Cartwright, and Michael Vaughn and Christie Wilson, Intervenor vs. **Premier Parks, Inc. d/b/a Six Flags Over Texas, Inc.**, vs. Canyon Manufacturing Company (In the District Court of Tarrant County, Texas, 342ND Judicial District)(2003)

- Pioneer Financial Services Inc., et al., v. **Omni Loan Co. Ltd.** (In the United States District Court for the Western District of Missouri, Kansas City Division)(2001)

- **The State of Texas** v. J. Grady Brown, Jr., et al. (County Court at Law No. Three of Denton County, Texas)(1997)

# Exhibit 3

CONFIDENTIAL

# Facts, Data, and Other Information Received

| Description | Bates Prefix | Start | End |
|---|---|---|---|
| **Legal Documents** | | | |
| Defendant's Answer and Affirmative Defenses to Plaintiff's Original Complaint and Original Counterclaims | | | |
| Plaintiff's Answer to Defendant's Original Counterclaims | | | |
| Plaintiff's Original Complaint | | | |
| **Documents Produced by Plaintiff** | | | |
| Chg off 10-14 to 7-15 CHGOFF11 RSA Data v1.0.xlsx | | | |
| ChgOff11 2016.xlsx | | | |
| Class Codes_04 10 2015.xlsx | | | |
| Copy of ChgoOff11_1 2_crw.xlsx | | | |
| Copy of Debt Sale_final_crw easy view.xls | | | |
| Debt Data 10-14 to 7-15 v2.0 (1).xlsx | | | |
| Debt Data 10-14 to 7-15 v6.1.xlsx | | | |
| Debt Sale pulled 11.1_removed deceased deduped.xls | | | |
| Debt Sale Pulled 8 8 14 deduped for control totals.xls | | | |
| Debt Sale Pulled 9 9 14_dedup.xls | | | |
| Exclusion Rules or Conditions | | | |
| Purchase and Sale Agreement dated September 15, 2014 between Conn Credit I, L.P. and Sherman Originator III LLC | | | |
| Retail Installment Contract and Insurance between Conn Appliances, Inc. and Christle H. Herrera effective February 2, 2012 | | | |
| RSA review SHERMAN 101215 as requested by counsel.xlsx | | | |
| **Documents Independently Obtained** | | | |
| Conn's, Inc. Form 10-K for the fiscal year ended January 31, 2015 | | | |

CONFIDENTIAL.

# Exhibit 4

CONFIDENTIAL

## Summary Of Conn's Damages Resulting From Sherman's Alleged Breach Of The PSA

| Delivery No. | Charge-Off Month | No. of Charged Off Accounts | Charged Off Account Balance | Purchase Price Percentage | Purchase Price per PSA | Purchase Price Adjustment for Unearned RSA (a) | Total Recovered by Conn (b) | Conn's Damages |
|---|---|---|---|---|---|---|---|---|
| 3 (c) | October 2014 | 5,907 | $11,126,460 | 7.28% | $810,006 | $51,688 | $282,157 | $476,161 |
| 4 | November 2014 | 8,572 | $18,355,875 | 7.28% | $1,336,308 | $92,073 | $601,949 | $642,286 |
| 5 | December 2014 | 9,199 | $19,101,224 | 7.28% | $1,390,569 | $94,736 | $523,787 | $772,047 |
| 6 | January 2015 | 9,382 | $18,684,694 | 7.28% | $1,360,246 | $92,889 | $584,032 | $683,325 |
| 7 | February 2015 | 8,392 | $17,390,746 | 7.28% | $1,266,046 | $87,554 | $446,267 | $732,226 |
| 8 | March 2015 | 9,304 | $19,088,888 | 7.28% | $1,389,671 | $94,635 | $337,240 | $957,796 |
| 9 | April 2015 | 9,090 | $18,486,306 | 7.28% | $1,345,803 | $91,485 | $420,168 | $834,150 |
| Subtotal | | 59,846 | $122,234,192 | | $8,898,649 | $605,060 | $3,195,598 | $5,097,991 |
| 10 | May 2015 | 9,021 | $19,016,400 | 7.28% | $1,384,394 | $92,538 | $293,070 | $998,786 |
| 11 (d) | June 2015 | 8,702 | $18,337,936 | 7.28% | $1,335,002 | $89,415 | $349,278 | $896,309 |
| 12 | July 2015 | 8,148 | $17,958,051 | 7.28% | $1,307,346 | $85,919 | $341,856 | $879,571 |
| Subtotal | | 25,871 | $55,312,387 | | $4,026,742 | $267,872 | $984,203 | $2,774,667 |
| Grand Total | | 85,717 | $177,546,579 | | $12,925,391 | $872,932 | $4,179,802 | $7,872,657 |

Notes:

(a) Purchase Price Adjustment is calculated as (Unearned RSA Portion of Line Balance - 7.28%) for unearned RSA amounts of $1 or greater.

(b) Total Recovered by Conn represents the total amount that Conn recovered by servicing the charged off accounts through October 18, 2016.

(c) Delivery No. 3 was already sent to Sherman. Therefore the number of charged off accounts, charged off account balance, and purchase price adjustment for unearned RSA remain the same as those in the Declaration of Bruce L. Blacker (dated September 16, 2016).

(d) Account No. 424278230 was removed from the account data for Delivery No. 11 because the same account number was included in the account data for the Bulk Delivery sent to Sherman (Debt Sale Pulled 8.8.14 deduped for control totals.xls).

(e) Totals may not tie due to rounding.

Sources:

[1] Account data for Delivery No. 3 sent to Sherman (Debt Sale pulled 11.1_removed deceased deduped.xls).

[2] Account data for Delivery Nos. 4 – 12 (Debt Data 10-14 to 7-15 v6.1.xlsx).

[3] RSA data for Delivery No. 3 sent to Sherman (ChgOff11 2016.xlsx).

[4] RSA data for Delivery Nos. 4-12 (Chg off 10-14 to 7-15 CHGOFF11 RSA Data v1.0.xlsx).

CONFIDENTIAL

Exhibit 5

CONFIDENTIAL

## Summary Of Purchase Price Adjustment For Unearned RSA

| Delivery No. | Accounts with Unearned RSA sold prior to 2012 OR not originated in Texas [a] | | | Accounts with Unearned RSA sold from 2012 to present AND originated in Texas [a] | | | Total Accounts with Unearned RSA | | |
|---|---|---|---|---|---|---|---|---|---|
| | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] |
| 3 | 778 | $166,985 | $12,157 | 2,643 | $543,026 | $39,532 | 3,420 | $710,011 | $51,689 |
| 4 | 1,402 | $325,059 | $23,664 | 4,249 | $939,702 | $68,410 | 5,649 | $1,264,762 | $92,075 |
| 5 | 1,403 | $304,636 | $22,177 | 4,662 | $996,694 | $72,559 | 6,065 | $1,301,329 | $94,737 |
| 6 | 1,591 | $368,734 | $26,844 | 4,514 | $907,236 | $66,047 | 6,102 | $1,275,970 | $92,891 |
| 7 | 1,522 | $353,199 | $25,713 | 4,061 | $849,490 | $61,843 | 5,583 | $1,202,689 | $87,556 |
| 8 | 1,542 | $367,205 | $26,733 | 4,563 | $932,743 | $67,904 | 6,105 | $1,299,949 | $94,636 |
| 9 | 1,650 | $384,012 | $27,956 | 4,299 | $872,665 | $63,530 | 5,948 | $1,256,677 | $91,486 |
| 10 | 1,542 | $377,132 | $27,455 | 4,348 | $894,016 | $65,084 | 5,889 | $1,271,148 | $92,540 |
| 11 | 1,568 | $377,745 | $27,500 | 4,087 | $850,499 | $61,916 | 5,654 | $1,228,244 | $89,416 |
| 12 | 1,428 | $347,584 | $25,304 | 3,879 | $832,639 | $60,616 | 5,307 | $1,180,223 | $85,920 |
| **Total** | **14,426** | **$3,372,291** | **$245,503** | **41,305** | **$8,618,710** | **$627,442** | **55,722** | **$11,991,001** | **$872,945** |

*Excluding Unearned RSA Amounts Less Than $1*

| Delivery No. | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] | No. of Accounts [b] | Unearned RSA Portion of Line Balance [c] | Purchase Price Adjustment [d] |
|---|---|---|---|---|---|---|---|---|---|
| 3 | 777 | $166,983 | $12,156 | 2,634 | $543,019 | $39,532 | 3,410 | $710,002 | $51,688 |
| 4 | 1,398 | $325,052 | $23,664 | 4,235 | $939,691 | $68,409 | 5,631 | $1,264,743 | $92,073 |
| 5 | 1,399 | $304,630 | $22,177 | 4,652 | $996,685 | $72,559 | 6,051 | $1,301,316 | $94,736 |
| 6 | 1,588 | $368,723 | $26,843 | 4,504 | $907,223 | $66,046 | 6,089 | $1,275,947 | $92,889 |
| 7 | 1,517 | $353,187 | $25,712 | 4,055 | $849,481 | $61,842 | 5,572 | $1,202,669 | $87,554 |
| 8 | 1,540 | $367,204 | $26,732 | 4,551 | $932,727 | $67,903 | 6,091 | $1,299,931 | $94,635 |
| 9 | 1,643 | $384,003 | $27,955 | 4,291 | $872,654 | $63,529 | 5,933 | $1,256,657 | $91,485 |
| 10 | 1,540 | $377,127 | $27,455 | 4,338 | $893,998 | $65,083 | 5,877 | $1,271,125 | $92,538 |
| 11 | 1,566 | $377,743 | $27,500 | 4,078 | $850,488 | $61,916 | 5,643 | $1,228,230 | $89,415 |
| 12 | 1,424 | $347,580 | $25,304 | 3,865 | $832,623 | $60,615 | 5,289 | $1,180,203 | $85,919 |
| **Total** | **14,392** | **$3,372,233** | **$245,499** | **41,203** | **$8,618,589** | **$627,433** | **55,586** | **$11,990,822** | **$872,932** |

**Notes:**

(a) An account is assumed to originate in Texas if the state of the primary obligor's home address is Texas. If the home address state is not recorded, the account is assumed to originate in Texas.

(b) Accounts included in this schedule were identified to have at least one line of warranty with remaining warranty days after the date of charge-off.

(c) Unearned RSA Portion of Line Balance is calculated as (warranty price per day × remaining warranty days after charge off), where warranty price per day is calculated as (original warranty price / total warranty days).
Duplicate observations were removed from the RSA data.

(d) Purchase Price Adjustment is calculated as (Unearned RSA Portion of Line Balance × 7.28%).

(e) Delivery No. 3 was already sent to Sherman. Therefore the number of accounts, unearned RSA portion of line balance, and purchase price adjustment for unearned RSA remain the same as those in the Declaration of Bruce L. Blacker (dated September 16, 2016).

(f) Totals may not tie due to rounding.

**Sources:**

[1] Account data for Delivery No. 3 sent to Sherman (Debt Sale pulled 11.1_removed deceased deduped.xls).

[2] Account data for Delivery Nos. 4 – 12 (Debt Data 10-14 to 7-15 v6.1.xlsx).

[3] RSA data for Delivery No. 3 sent to Sherman (ChgOff11 2016.xlsx).

[4] RSA data for Delivery Nos. 4-12 (Chg off 10-14 to 7-15 CHGOFF11 RSA Data v1.0.xlsx).

CONFIDENTIAL

# Exhibit 6

CONFIDENTIAL

**Conditions**

Charge Off Date is between 1 months ago and 1 days ago
and Net Charge Off Amount is greater than 25
and Last Paid Date is earlier than or equal to 30 days ago
and Class Code is not equal to "13"
and Class Code is not equal to "53"
and Class Code is not equal to "63"
and Class Code Numeric is not between 75 and 80
and Class Code Numeric is not between 90 and 99
and Desk is not "Bank Desk", "Bankruptcy Charge Off", "Cease And Desist", "Conn's Employee", "Legal Charge Off", "No Agency Placement", "Psleh Placed", "Solda Desk" or "Southwest Credit Sold"
and Status is not "Promise Payment Arrangement ***"

CONFIDENTIAL

# Exhibit 7

CONFIDENTIAL

| class code | description | Can we collect? | Special Notes |
|---|---|---|---|
| 13 | dismissed bankruptcy | Y | |
| 53 | settlement/disputes | N | |
| 63 | attorney representation | N | |
| 75 | Legal Judgement | Y | only legal agents |
| 76 | Legal In Process | Y | only legal agents |
| 77 | Legal in Process - LA | Y | only legal agents |
| 78 | Legal Deceased | Y | |
| 79 | Legal Fraud | N | |
| 80 | Discharged/reaffirm 7's | Y | |
| 90 | chapter 13 awaiting confirmation | N | |
| 91 | Chapter 7 awaiting reaffirmation/surrender/discharge | N | |
| 92 | unsecured portion of chapter 13 | N | |
| 93 | unsecured portion of chapter 7 | N | |
| 94 | secured portion receiving trustee payments of chapter 7 | N | |
| 95 | reaffirmed portion of chapter 7 awaiting discharge | N | |
| 96 | unsecured portion of chapter 7 | N | |
| 99 | Repossession | Y | |

CONFIDENTIAL

# Exhibit 8

CONFIDENTIAL

**Summary Of Charge-Off Account Balance In Two Data Sources**

| | Accounts In Original Account Data Only | | | Accounts In Both Original and Supplemental Account Data | | | Accounts In Supplemental Account Data Only | | |
|---|---|---|---|---|---|---|---|---|---|
| Delivery No. | No. of Charged Off Account | Total Charge Off Balance in Original Account Data [a] | Total Charge Off Balance in Supplemental Account Data [b] | No. of Charged Off Account | Total Charge Off Balance in Original Account Data [a] | Total Charge Off Balance in Supplemental Account Data [b] | No. of Charged Off Account | Total Charge Off Balance in Original Account Data [a] | Total Charge Off Balance in Supplemental Account Data [b] |
| 3 | - | - | - | 5,907 | $11,126,460 | $11,126,460 | - | - | - |
| 4 | 38 | $106,039 | - | 7,307 | $15,461,809 | $15,462,905 | 1,265 | - | $2,892,970 |
| 5 | 47 | $144,784 | - | 8,068 | $16,774,500 | $16,774,804 | 1,131 | - | $2,326,420 |
| 6 | 169 | $566,398 | - | 8,033 | $15,563,747 | $15,563,960 | 1,349 | - | $3,120,734 |
| 7 | 66 | $270,923 | - | 7,152 | $14,563,211 | $14,563,211 | 1,240 | - | $2,827,535 |
| 8 | 48 | $223,212 | - | 7,972 | $15,840,247 | $15,840,972 | 1,332 | - | $3,247,916 |
| 9 | 109 | $420,964 | - | 7,678 | $15,171,650 | $15,171,650 | 1,412 | - | $3,314,656 |
| Subtotal | 477 | $1,732,319 | - | 52,117 | $104,501,622 | $104,503,960 | 7,729 | - | $17,730,231 |
| 10 | 77 | $353,354 | - | 8,180 | $17,068,626 | $17,068,626 | 841 | - | $1,947,774 |
| 11 | 75 | $260,946 | - | 7,575 | $15,662,446 | $15,662,446 | 1,127 | - | $2,675,490 |
| 12 | 26 | $65,613 | - | 7,270 | $15,880,412 | $15,880,412 | 878 | - | $2,077,639 |
| Subtotal | 178 | $679,913 | - | 23,025 | $48,611,484 | $48,611,484 | 2,846 | - | $6,700,903 |
| Grand Total | 655 | $2,412,232 | - | 75,142 | $153,113,106 | $153,115,444 | 10,575 | - | $24,431,134 |

Notes:

(a) Total Charge Off Balance. Calculated using "ORIGNETCO" variable in the Account Data (see source [1] and [2]).

(b) Total Charge Off Balance. Calculated using "ORIGCHGO" variable in the Debt Data (see source [3]).

(c) Delivery No 3 was already sent to Sherman. Therefore the number of charged off accounts and charged off account balance remain the same as those in the Declaration of Bruce L. Blacker (dated September 16, 2016).

Sources:

[1] Original account data for Delivery No. 3 sent to Sherman (Debt Sale pulled 11.1, removed deceased deduped.xls)

[2] Original account data for Delivery Nos. 4 – 12 (Debt Data 10-14 to 7-15 v2.0 (1).xlsx)

[3] Supplemental Account Data (Debt Data 10-14 to 7-15 v6.1.xlsx)

CONFIDENTIAL

## Summary Of Total Recovery In Two Data Sources

| | Accounts In Original Account Data Only | | | Accounts In Both Original and Supplemental Account Data | | | Accounts In Supplemental Account Data Only | | |
|---|---|---|---|---|---|---|---|---|---|
| Delivery No. | No. of Charged Off Account | Total Recovery in Original Account Data[a] | Total Recovery in Supplemental Account Data[b] | No. of Charged Off Account | Total Recovery in Original Account Data[a] | Total Recovery in Supplemental Account Data[b] | No. of Charged Off Account | Total Recovery in Original Account Data[a] | Total Recovery in Supplemental Account Data[b] |
| 3 | - | - | - | 5,907 | $410 | $282,157 | - | - | $597,904 |
| 4 | 38 | - | - | 7,307 | $538 | $4,045 | 1,265 | - | $520,785 |
| 5 | 47 | - | - | 8,068 | - | $3,002 | 1,131 | - | $582,513 |
| 6 | 169 | - | - | 8,033 | $79 | $1,518 | 1,349 | - | $439,542 |
| 7 | 66 | - | - | 7,152 | $2,900 | $6,725 | 1,240 | - | $333,959 |
| 8 | 48 | - | - | 7,972 | $175 | $3,281 | 1,332 | - | $415,888 |
| 9 | 109 | - | - | 7,678 | $826 | $4,280 | 1,412 | - | - |
| Subtotal | 477 | - | - | 52,117 | $4,927 | $305,008 | 7,729 | - | $2,890,590 |
| 10 | 77 | - | - | 8,180 | $100 | $7,116 | 841 | - | $285,953 |
| 11 | 75 | $400 | - | 7,575 | - | $282 | 1,127 | - | $348,996 |
| 12 | 26 | - | - | 7,270 | $3,826 | $11,309 | 878 | - | $330,547 |
| Subtotal | 178 | $400 | - | 23,025 | $3,926 | $18,707 | 2,846 | - | $965,497 |
| Grand Total | 655 | $400 | - | 75,142 | $8,853 | $323,715 | 10,575 | - | $3,856,087 |

**Notes:**

(a) Total Recovered by Conn represents the total amount that Conn recovered by servicing the charged off accounts through October 18, 2016. Calculated using "TOTRECCVR" variable in the Account Data (see source [1] and [2]).

(b) Total Recovered by Conn represents the total amount that Conn recovered by servicing the charged off accounts through October 18, 2016. Calculated using "Total Recoveries" variable in the Debt Data (see source [3]).

(c) Delivery No. 3 was already sent to Sherman. Therefore the number of charged off accounts remain the same as those in the Declaration of Bruce L. Blacker (dated September 16, 2016).

**Sources:**

[1] Original account data for Delivery No. 3 sent to Sherman (Debt Sale pulled 11.1, removed deceased deduped.xls).
[2] Original account data for Delivery Nos. 4 – 12 (Debt Data 10-14 to 7-15 v2.0 (1).xlsx).
[3] Supplemental Account Data (Debt Data 10-14 to 7-15 v6.1.xlsx).

CONFIDENTIAL

## Summary Of Purchase Price Adjustment For Unearned RSA In Two Data Sources

| | Accounts In Original Account Data Only | | | Accounts In Both Original and Supplemental Account Data | | | Accounts In Supplemental Account Data Only | | |
|---|---|---|---|---|---|---|---|---|---|
| Delivery No. | No. of Charged Off Account | Purchase Price Adjustment for Unearned RSA Using Original Data[b] | Purchase Price Adjustment for Unearned RSA Using Supplemental Data[a] | No. of Charged Off Account | Purchase Price Adjustment for Unearned RSA Using Original Data[a] | Purchase Price Adjustment for Unearned RSA Using Supplemental Data[a][b] | No. of Charged Off Account | Purchase Price Adjustment for Unearned RSA Using Original Data[a] | Purchase Price Adjustment for Unearned RSA Using Supplemental Data[a] |
| 3 | - | - | - | 5,907 | $51,688 | $51,688 | - | - | - |
| 4 | 38 | $689 | - | 7,307 | $78,623 | $78,645 | 1,265 | - | $13,429 |
| 5 | 47 | $738 | - | 8,068 | $83,888 | $83,907 | 1,131 | - | $10,829 |
| 6 | 169 | $2,898 | - | 8,033 | $77,377 | $77,377 | 1,349 | - | $15,512 |
| 7 | 66 | $1,484 | - | 7,152 | $72,783 | $72,783 | 1,240 | - | $14,772 |
| 8 | 48 | $1,208 | - | 7,972 | $78,908 | $78,902 | 1,332 | - | $15,733 |
| 9 | 109 | $2,297 | - | 7,678 | $75,013 | $75,038 | 1,412 | - | $16,447 |
| Subtotal | 477 | $9,314 | - | 52,117 | $518,281 | $518,339 | 7,729 | - | $86,721 |
| 10 | 77 | $1,675 | - | 8,180 | $83,490 | $83,490 | 841 | - | $9,048 |
| 11 | 75 | $1,585 | - | 7,575 | $76,860 | $76,860 | 1,127 | - | $12,555 |
| 12 | 26 | $307 | - | 7,270 | $76,083 | $76,083 | 878 | - | $9,835 |
| Subtotal | 178 | $3,567 | - | 23,025 | $236,433 | $236,433 | 2,846 | - | $31,439 |
| Grand Total | 655 | $12,880 | - | 75,142 | $754,714 | $754,773 | 10,575 | - | $118,159 |

Notes:
(a) Purchase Price Adjustment is calculated as (Unearned RSA Portion of Line Balance × 7.28%) for unearned RSA amounts of $1 or greater.
(b) Delivery No. 3 was already sent to Sherman. Therefore the number of charged off accounts and purchase price adjustment for unearned RSA remain the same as those in the Declaration of Bruce L. Blacker (dated September 16, 2016).

Sources:
[1] Original account data for Delivery No. 3 sent to Sherman (Debt Sale pulled 11.1_removed deceased deduped.xls).
[2] Original account data for Delivery Nos. 4 – 12 (Debt Data 10-14 to 7-15 v2.0 (1).xlsx).
[3] Supplemental Account Data (Debt Data 10-14 to 7-15 v6.1.xlsx).
[4] Original RSA data (ChgOff11 2016.xlsx).
[5] Supplemental RSA data (Chg off 10-14 to 7-15 CHGOFF11 RSA Data v1.0.xlsx).

CONFIDENTIAL