UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CONN CREDIT I, LP, | ) | |
| | ) | |
| Plaintiff-Counter-Defendant, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-3713 |
| | ) | |
| SHERMAN ORIGINATOR III LLC, | ) | |
| | ) | |
| Defendant-Counter-Plaintiff. | ) | |
| | ) | |

### SHERMAN ORIGINATOR III, LLC'S OPPOSITION TO CONN CREDIT I, LP'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... iii

SUMMARY OF THE ARGUMENT .......................................................................... 1

STATEMENT OF FACTS ......................................................................................... 2

I.       Conn's April 2014 Sale of its Charged-Off Loan Portfolio to TF LoanCo. ...................... 2

II.      Conn and Garnet Sell the Remainder of the Portfolio to Sherman. ................................... 4

III.     Sherman Experiences Unprecedented Dispute Rates on the Conn Portfolio and
         Demands Repurchase of the Accounts by Conn. ................................................ 6

STATEMENT OF ISSUES ....................................................................................... 7

STANDARD OF REVIEW ....................................................................................... 7

ARGUMENT ............................................................................................................. 8

I.       THE EVIDENCE ESTABLISHES EACH AND EVERY ELEMENT OF
         SHERMAN'S FRAUDULENT INDUCEMENT CLAIM AS A MATTER OF
         LAW. ............................................................................................................... 8

         A.       The Undisputed Facts Show that When Sherman Directly Inquired About
                  the Prior Purchaser, Conn Lied and Willfully Concealed All Material
                  Information About TF LoanCo. ........................................................... 9

         B.       The Undisputed Facts Show that Conn Knew the "Unable to Fund"
                  Representation Was False and Recklessly Instructed Garnet to Make It
                  Anyway. ............................................................................................... 11

         C.       The Undisputed Facts Show that Conn Intended All Along that Sherman
                  Would Rely and Act Upon Its Misrepresentations and Non-Disclosures............. 11

         D.       The Undisputed Facts Show that Sherman Relied on Conn's
                  Representations as a Matter of Law. .................................................... 13

II.      NEITHER SECTION 7.1 NOR SECTION 7.5 OF THE PSA EXCUSE OR
         NEGATE CONN'S TEXTBOOK FRAUDULENT INDUCEMENT. ........................ 13

         A.       Conn Waived the Affirmative Defense of Disclaimer as to Sherman's
                  Fraudulent Inducement Claim by Failing to Plead It. .......................... 14

         B.       Section 7.1 of the PSA Fails to Immunize Conn's Fraud. .................... 14

                  1.       "Anti-Reliance" Clauses Like Section 7.1 Do Not Automatically
                           Bar Fraud Claims. ................................................................. 15

i

2.      Section 7.1 Does Not Disclaim Reliance on Conn's Material Omissions................................................................................ 18

3.      Section 7.1 Does Not Apply to Statements by Garnet............................ 20

C.      Section 7.5 of the PSA Is Irrelevant to Conn's Fraud Regarding TF LoanCo.................................................................................................. 22

CONCLUSION............................................................................................................. 24

SHERMAN'S OPPOSITION TO CONN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Brush v. Reata Oil and Gas Corp.*,
    984 S.W.2d 720 (Tex. App. 1998, pet. denied) ............................................................ 13

*Coastal Bank SSB v. Chase Bank of Tex., N.A.*,
    135 S.W.3d 840 (Tex. App. 2004) ................................................................................ 19

*Conservation Org. v. City of Dallas,*
    *Tex.*, 529 F.3d 519 (5th Cir. 2008) .............................................................................. 8

*Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*,
    369 F. Supp. 2d 848 (E.D. Tex. 2004) ................................................................... 20, 23

*DIMON Inc. v. Folium, Inc.*,
    48 F. Supp. 2d 359 (S.D.N.Y. 1999) ............................................................................ 18

*Duke Energy Int'l, L.L.C. v. Napoli*,
    748 F. Supp. 2d 656 (S.D. Tex. 2010) .................................................................... 16, 23

*Energy XXI, GOM, LLC v. New Tech Eng'g, L.P.*,
    787 F. Supp. 2d 590 (S.D. Tex. 2011) ...................................................................... 7, 8

*Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*,
    51 S.W.3d 573 (Tex. 2001) ........................................................................................... 12

*Forest Oil Corp. v. McAllen*,
    268 S.W.3d 51 (Tex. 2008) ...................................................................................... 15, 16

*Grant Thornton LLP v. Prospect High Income Fund*,
    314 S.W.3d 913 (Tex. 2010) ........................................................................................ 12

*Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*,
    27 Misc. 3d 1236(A) (N.Y. Sup. Ct. 2010) ................................................................ 18

*Hoggett v. Brown*,
    971 S.W.2d 472 (Tex. App. 1997) .......................................................................... 10, 11

*In re Hunt*,
    124 B.R. 200 (N.D. Tex. 1991) ................................................................................... 23

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011) .................................................................................. 11, 16

*Jackson Fulgham dba Commerce St. Partners v. Allied Prop. & Cas. Ins. Co.*,
    No. 05-14-00189-CV, 2015 Tex. App. LEXIS 5463 (May 28, 2015) ............................ 17

Sherman's Opposition to Conn's Motion for Partial Summary Judgment

*MAN Engines & Components, Inc. v. Shows*,
    434 S.W.3d 132 (Tex. 2014)..................................................................... 14

*McLernon v. Dynergy, Inc.*,
    347 S.W.3d 315 (Tex. App. 2011)............................................................ 16

*Newman v. Firstmark Credit Union*,
    2015 Tex. App. LEXIS 8802 (Tex. App. Aug. 21, 2015) .............................. 19

*Paull v. Capital Res. Mgmt., Inc.*,
    987 S.W.2d 214 (Tex. App. 1999)...................................................... 17, 18

*Prudential Ins. Co. of Am. v. Jefferson Assocs.*,
    896 S.W.2d 156 (Tex. 1995)................................................................... 24

*S.A.H.H. Hosp. Mgmt., LLC v. San Antonio Hosp. Mgmt., Inc.*,
    No. SA-12-CV-1069-XR, 2013 U.S. Dist. LEXIS 151881 (W.D. Tex. Oct. 22, 2013)... 19

*Samedan Oil Corp. v. Intrastate Gas Gathering, Inc.*,
    78 S.W.3d 425 (Tex. App. 2001).......................................................... 14, 15

*Schlumberger Tech. Corp. v. Swanson*,
    959 S.W.2d 171 (Tex. 1997)................................................................... 20

*Smith v. Nat'l Resort Cmtys., Inc.*,
    585 S.W.2d 655 (Tex. 1979)................................................................... 17

*St. Paul Mercury Ins. Co. v. Williamson*,
    224 F.3d 425 (5th Cir. 2000) ................................................................ 8, 9

*Trenholm v. Ratcliff*,
    646 S.W.2d 927 (Tex. 1983)................................................................... 18

*Van Houten v. City of Fort Worth*,
    827 F.3d 530 (5th Cir. 2016) ................................................................. 18

*Woodfield v. Bowman*,
    193 F.3d 354 (5th Cir. 1999) ................................................................. 14

## Rules

Federal Rule of Civil Procedure 8(c)(1) ...................................................... 14

## SUMMARY OF THE ARGUMENT

Conn's attempt to portray Sherman's fraudulent inducement claim as a "stretch" of a breach of contract claim requires it to gloss over the undisputed facts of Conn's material misrepresentations and non-disclosures regarding TF LoanCo.  Conn's short shrift of these facts is not surprising, as they illustrate Conn's fraud, and demonstrate Sherman's entitlement to summary judgment.

The reality is that when Conn asked Sherman in late August 2014 whether it was still interested in purchasing the Conn portfolio, Conn had already sued the prior purchaser, TF LoanCo, just days earlier.  Conn withheld that fact from Sherman.  Conn's lawsuit followed months of detailed and contentious negotiation between it and TF LoanCo, beginning shortly after the first closing and continuing through late August 2014, stemming from TF LoanCo's severe account-related issues, including inaccurate account balances.  Conn intentionally hid all that from Sherman, too.  And when Sherman (of course) inquired why the accounts were again available and what happened to the prior purchaser, Conn and Garnet followed the plan they had previously cooked up and lied, telling Sherman only that TF LoanCo had been "unable to fund" additional purchases.  All of these facts are undisputed in light of the evidence and require summary judgment for Sherman on its fraudulent inducement claim. At a minimum, they present material issues of fact that preclude summary judgment for Conn.

Sherman relied upon Conn's misrepresentations and non-disclosures regarding TF LoanCo.  Had it known the truth about the problems TF LoanCo experienced, it would not have purchased the Conn accounts.  After it did so, Sherman was almost immediately deluged with disputes from Conn's customers, just as TF LoanCo had been.  The extraordinary dispute rate required Sherman to stop all collections as it demonstrated that the account balances that Conn

1

provided were inaccurate and unreliable.  Sherman refused to accept further accounts, terminated the PSA, and demanded that Conn repurchase those accounts it had delivered.

Conn now turns to the "anti-reliance" language in Section 7.1 of the PSA in search of a get-out-of-jail-free card for its fraud.  Section 7.1 does not encompass omissions, specifically excludes representations by Garnet, and hardly gives Conn a free pass to intentionally lie and mislead Sherman in response to its specific and highly material inquiry about the prior purchaser. Likewise, Section 7.5, the PSA's "as-is" clause, has nothing at all to do with Conn's fraud.  The undisputed facts demonstrate that Conn committed fraud through its material misrepresentations and omissions about TF LoanCo.  As a result, Sherman is entitled to summary judgment on its counterclaims, as further detailed in Sherman's own motion for summary judgment (Dkt. #64). Conn's motion for partial summary judgment should be denied.

## STATEMENT OF FACTS

### I.      Conn's April 2014 Sale of its Charged-Off Loan Portfolio to TF LoanCo.

1.      In Spring 2014, Conn worked with Garnet Capital Advisors, LLC ("Garnet") as the "Loan Sale Advisor," to offer for sale a portfolio of accounts charged-off between October 2013 and January 2014 and accounts that would be charged-off each month between February 2014 and January 2015.  Garnet marketed these loans to prospective buyers, including Sherman. (Dkt. #66-4 at 15:11-15, 75:19-77:13.)

2.      Although Sherman submitted a bid for the Conn portfolio in April 2014, Conn selected a different buyer, TF LoanCo III, LLC ("TF LoanCo").  (FD ¶ 26.)[1]

---

[1] "FD" refers to the Declaration of Bryan Faliero filed by Sherman in support of its Motion for Summary Judgment as Dkt. #65.  Sherman references other previously-filed evidence herein by its docket number.

3.      On April 30, 2014, Conn entered into a purchase and sale agreement with TF LoanCo (the "TF PSA").  By May 9, 2014, TF LoanCo and Conn had closed on the first three account deliveries.  (Dkt. #66-5 at 17:22-19:14.)

4.      Far from "reasons and compromises" "as excuses of its further performance," as characterized by Conn (Dkt. #68, p. 3), TF LoanCo raised serious issues with the accounts it purchased within the first month of attempted collections, first to Garnet and then to Conn directly.  Conn and TF LoanCo negotiated these issues constantly, at times on a daily basis, from June through August 2014.  (Dkt. #66-5 at 20:20-21:22.)

5.      The issues encountered by TF LoanCo included problems similar to those Sherman later encountered, including that accounts had been previously settled by Conn, Conn delivered accounts with deceased borrowers, and that the account balances that Conn reported were inaccurate and misrepresented, among other things.  As a result, TF LoanCo considered many of the accounts in the Conn portfolio to be unenforceable.  (Dkt. #66-12; #66-11; #66-4 at 321:1-323:13; #66-5 at 20:20-21:22, 33:14-18, 36:2-37:15, 42:16-43:5.)

6.      TF LoanCo and Conn attempted to resolve these issues for months.  Their negotiations included an in-person meeting and multiple letters exchanged by counsel.  In August 2014, after these extended unsuccessful negotiations, TF LoanCo refused to close on any further deliveries, alleging that Conn had materially breached the TF PSA and committed fraud.  (Dkt. #66-11; #66-5 at 30:17-20, 53:22-54:7.)

7.      Conn sued TF LoanCo in the U.S. District Court for the Eastern District of Texas on August 23, 2014.  (*Conn Credit I, LP v. TF LoanCo III, LLC*, Civ. A. No. 1:14-cv-00429 (the "TF LoanCo Litigation".)

3

**II.      Conn and Garnet Sell the Remainder of the Portfolio to Sherman.**

8.      Despite all that had transpired with TF LoanCo, Conn moved immediately to re-sell the remainder of the portfolio to Sherman.  (FD ¶ 27.)

9.      Before Garnet approached Sherman to determine whether it was still interested in purchasing, Conn and Garnet specifically agreed on what to tell Sherman about TF LoanCo. (12/21/16 Heinen Decl., Ex. B, Bell Dep. at 120:25-121:8.)  Conn decided not to tell Sherman about TF LoanCo's problems with the accounts or TF LoanCo's allegations of Conn's breach and fraud, and instructed Garnet "to limit what [it] discussed with Sherman" regarding TF LoanCo accordingly.  (Dkt. #66-4 at 54:6-10, 97:13-98:8.)  Conn instructed and authorized Garnet to tell Sherman only that TF LoanCo had been "unable to fund" further deliveries.  (Dkt. #66-2 at 128:11-129:19, 136:4-16; #66-4 at 331:22-332:6; #66-6 at 259:17-260:14; *cf* Dkt. #68 pp. 2-3.)

10.      On or about September 2, 2014, Bryan Faliero of Sherman asked Lou DiPalma of Garnet via phone and email why the accounts were again available for purchase and whether the prior purchaser had "stop[ped] funding because of performance."  It is undisputed that Mr. DiPalma told Mr. Faliero only that the prior purchaser had been "unable to fund" further deliveries.  (Dkt. #66-13; #66-4 at 54:15-55:1, 94:25-95:14; 99:24-100:4; #66-2 at 128:11-129:21, 131:9-133:2; #66-6 at 99:3-9; 105:3-107:5; Dkt. #68 p. 3.)

11.      That representation was false and had no reasonable basis when made.  Not once did anyone from TF LoanCo ever tell Conn or Garnet it was "unable to fund" or otherwise having difficulty financing the transaction, as Mike Poppe, Conn's Chief Operating Officer for Credit and Collections, Robert Bell, Conn's (now-former) General Counsel, Clint Walton, Conn's Senior Manager for Credit and Collections, Robin Ishmael, Garnet's managing partner and designated corporate representative, and Todd Mounts, the primary person involved in the

4

transaction for TF LoanCo, have all unequivocally testified.  (Dkt. #66-3 at 172:7-173:1, 173:13-174:4, 182:1-20; #66-2 at 81:24-82:7, 83:16-18; #66-1 at 280:23-282:21; #66-5 at 19:15-20:13, 27:23-28:13; 12/21/16 Heinen Decl., Ex. C, Ishmael Dep. at 258:5-260:23.)

12.     Instead, TF LoanCo repeatedly raised serious account-related issues, which, according to TF LoanCo's personnel, were the actual reason they eventually refused to fund further account deliveries from Conn:

> Q:  Was this issue related to TF LoanCo not being able to come up with enough money for future account deliveries?
>
> A:  That's, again, never been – it was never an issue, lack of funds. The issues were more of the breaches of the reps and warranties that were provided in the purchase and sale agreement by Conn's.

(Dkt. #66-5 at 30:14-20.)

13.     Had TF LoanCo and Conn been able to resolve TF LoanCo's account-related issues, TF LoanCo could have and likely would have closed on future deliveries.  (*Id.* at 30:17-20, 39:22-40:11, 52:6-7, 53:22-54:7.)

14.     Sherman and Conn entered into their PSA on or about September 15, 2014. Sherman agreed to purchase 13 deliveries of accounts from September 2014 through August 2015 – starting with the April 2014 through July 2014 charge-offs that, unbeknownst to Sherman, TF LoanCo had rejected (the "Accounts").[2]  (FD, Ex. 1.)

15.     At no time before Sherman and Conn entered into the PSA did Conn or Garnet disclose to Sherman (a) the identity of the prior purchaser; (b) TF LoanCo's reasons for refusing

---

[2] Sherman previously purchased a debt portfolio from Conn in 2012 (Dkt. #68, p. 4) that was "completely different" from the one purchased in the 2014 transaction.  (12/21/16 Heinen Decl., Ex. A, Faliero Dep. 64:4-11.)  Among other things, the accounts that Sherman purchased from Conn in 2012 were significantly older, meaning much more time had elapsed since the accounts were charged-off, making them worth less.  (*Id.* at 64:13-65:19.)  The 2012 Conn portfolio purchased by Sherman has no bearing on its fraudulent inducement claim in this matter.

to accept further deliveries; (c) the TF LoanCo default letters sent to Conn; or (d) the TF LoanCo

Litigation.  (Dkt. #66-3 at 193:15-194:22; #66-2 at 136:17-138:13; FD ¶ 29.)

### III.   Sherman Experiences Unprecedented Dispute Rates on the Conn Portfolio and Demands Repurchase of the Accounts by Conn.

16.     Shortly after receiving the initial deliveries of Accounts in late September 2014,

Sherman placed them for collection.  Sherman's collectors reached out to the account debtors

through various methods.  Sherman's initial collection efforts resulted in a tremendous and

unprecedented number of disputes from Conn's customers.  (FD ¶¶ 38, 42, 44.)

17.     Sherman first noticed these disputes through investigation of the poor initial

collection results on the Conn portfolio, which were reported in standard monthly reports for

September 2014, and reviewed by Sherman personnel like Bryan Faliero during the first week of

October.  (*Id*. ¶ 39.)

18.     The dispute rate as of November 17, 2014 (not even two months into the

collection process) was approximately 13 times higher than Sherman's historical and expected

dispute rates for similar loans to sub-prime customers.  It was these disputes, not poor collection

results, that required Sherman to demand, for the first time ever, that a seller repurchase nearly

an entire portfolio.[3]  (*Id*. ¶¶ 11, 44, 47.)

19.     The disputes lodged by Conn's customers included that merchandise had

been returned but not credited to the Account; that the Account balances reflected insurance that

consumers had not purchased or had not received promised benefits from; that Conn had told the

consumer that they would receive their purchase for free, but issued a charge or failed to issue a

---

[3] Conn's "facts" about the specifics of the dispute rate and their expert's interpretation of proper protocol regarding investigation of disputes are immaterial and irrelevant to Sherman's fraudulent inducement claim. (*See* Dkt. #68 at 7.)

credit; that Conn had deceptively marketed insurance; that Conn had provided deceptive descriptions of the goods; that Conn had not honored its warranties; and that Conn's products were defective.  (Dkt. #66-14; #66-6 at 217:1-18; 225:24-226:6; FD ¶ 44.)

20.     Sherman notified Conn that the high dispute rate and other issues with the Accounts constituted a breach of the PSA.  Sherman notified Conn that it would not accept more Accounts and demanded repurchase of the majority of the Accounts.  (Dkt. #66-16 – 66-18.)

21.     By December 6, 2014, Sherman had pulled every Account from its collection agencies with the exception of a handful that had made a payment without raising a dispute, and Sherman has not attempted to collect on any of these Accounts since that time.  (FD ¶ 48.)

22.     Sherman did not learn the identity of the prior purchaser, nor discover all of the other material information regarding TF LoanCo that Conn concealed, until after this litigation arose.  (FD ¶ 29.)

## STATEMENT OF ISSUES

1.     Does the evidence presented by Sherman of Conn's material misrepresentations and non-disclosures regarding TF LoanCo, upon which Conn intended that Sherman would rely in entering into the PSA and upon which Sherman did rely to its detriment, support judgment for Sherman on its fraudulent inducement claim, or create a dispute of material fact regarding that claim?

2.     Do Section 7.1 of the PSA, which does not mention the prior purchaser nor omissions by Conn, and intentionally excludes Garnet by its terms, or Section 7.5 of the PSA, a general representation regarding the Accounts, negate the undisputed facts demonstrating Sherman's reliance on Conn's misrepresentations and omissions?

## STANDARD OF REVIEW

On summary judgment, the moving party "bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact."  *Energy XXI, GOM, LLC v. New Tech Eng'g, L.P.*, 787 F. Supp. 2d 590, 599 (S.D. Tex. 2011).  When a movant seeks summary judgment on a claim upon which it does not bear the burden of proof, it

cannot rely on mere conclusory statements that the respondent has not presented evidence on an essential element of its claim. *See St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 440 (5th Cir. 2000).  In the same way, the moving party "will not meet its burden of proof based on conclusory bald assertions of ultimate facts." *Energy XXI, GOM, LLC*, 787 F. Supp. 2d at 600 (internal citations omitted).  "The court must view the evidence in the light most favorable to the non-movant and draw all justifiable inferences in favor of the non-movant." *Envl. Conservation Org. v. City of Dallas, Tex.*, 529 F.3d 519, 524 (5th Cir. 2008).

## ARGUMENT

### I.  THE EVIDENCE ESTABLISHES EACH AND EVERY ELEMENT OF SHERMAN'S FRAUDULENT INDUCEMENT CLAIM AS A MATTER OF LAW.

Sherman has filed a motion for summary judgment on its claim for fraudulent inducement, demonstrating that the undisputed evidence proves Conn's fraud and entitles Sherman to judgment.  (Dkt. #64.)  Conn moves for summary judgment on this same claim, arguing that Sherman has failed to satisfy the elements of fraudulent inducement, based upon three basic arguments: (1) Sherman cannot point to any representations made by Conn that Conn knew were false; (2) Sherman cannot show that Conn acted with the intent to defraud Sherman; and (3) Sherman disclaimed reliance on any of Conn's misrepresentations.  (Dkt. #68. pp. 15-16.)

All three arguments fail.  Sherman has clearly identified both affirmative misrepresentations and non-disclosures by Conn related to TF LoanCo, all of which are material. Conn's own actions make clear its intent to mislead Sherman and induce it to enter into the PSA. The PSA does not cleanse Conn of its clear fraud.  Conn has not carried its burden to demonstrate the absence of a dispute of material fact on these issues.  Rather, the evidence in the

record establishes the elements of fraudulent inducement as a matter of law (*see* Dkt. #64).  In either event, Conn's motion must be denied.

### A.   The Undisputed Facts Show that When Sherman Directly Inquired About the Prior Purchaser, Conn Lied and Willfully Concealed All Material Information About TF LoanCo.

Conn unpersuasively argues that Sherman cannot identify any misrepresentations by Conn.  (Dkt. #68, p. 15.)  But Conn fails to carry its burden to demonstrate the absence of evidence as to its misrepresentations and omissions to Sherman, instead relying on a conclusory assertion that "Sherman must identify which representations it claims fraudulently induced it into entering the PSA."  (*Id*.)  Such conclusory statements do not support summary judgment.  *See St. Paul Mercury Ins. Co.*, 224 F.3d at 440.  More importantly, Conn identifies the misrepresentation in its own brief – "Garnet falsely represented to [Sherman] that the previous purchase ended due to funding," as Garnet had been instructed by Conn.  (Dkt. #68, at 15.)

The undisputed facts establish Conn's misrepresentations and omissions.  After Garnet asked whether Sherman remained interested in purchasing the Accounts, Sherman, knowing that Conn had sold the portfolio to another buyer just a few months earlier, wanted to know what had happened.  To find out, Bryan Faliero specifically asked Garnet, Conn's designated intermediary, why the prior purchaser refused to purchase further accounts and whether the prior purchaser had experienced issues that led to the unexpected end of the deal.  Garnet's response, directed by Conn, was that TF LoanCo had been "unable to fund."  That representation was false and intended to mislead Sherman by omitting all material information about TF LoanCo's real issues with its accounts, and the negotiations and litigation that ensued.

Conn's incomplete and misleading representation that TF LoanCo refused to close because it was "unable to fund" omitted every material fact that defined the relationship between Conn and TF LoanCo.  Under Texas law, "when one voluntarily discloses information, the

9

whole truth must be disclosed," and "when one makes a partial disclosure and conveys a false impression," a duty to disclose arises. *Hoggett v. Brown*, 971 S.W.2d 472, 487 (Tex. App. 1997). Conn did not disclose, and instead concealed, all of TF LoanCo's issues with its accounts, including questioning the account balances and whether the accounts were enforceable. (Dkt. #64 ¶¶ 20, 24.)

By the time of Mr. Faliero's inquiry, months of negotiation had already occurred, multiple demand letters had been exchanged, and Conn had sued TF LoanCo. Conn omitted and concealed *all* of this material information from Sherman.[4] (*Id.* ¶¶ 21-22, 24, 28.) At no time before Sherman and Conn entered into the PSA did Conn or Garnet inform Sherman of (a) the identity of the prior purchaser; (b) the reasons that TF LoanCo provided as the basis for its refusal to accept further deliveries; (c) the TF LoanCo default letters sent to Conn; nor (d) the TF LoanCo Litigation. (Dkt. #66-3 at 193:15-194:22; #66-2 at 136:17-138:13; FD ¶ 29.)

In its brief, Conn now states that it and Garnet merely "believed TF LoanCo was having difficulty funding its future obligations" (Dkt. #68, p. 3), suggesting that its misrepresentation that TF LoanCo was "unable to fund" was mere opinion, not fact. Even if this was Conn's "opinion," however, Conn represented TF LoanCo's "inability to fund" as a fact to Sherman with no suggestion that it was an "opinion" and no explanation of the facts on which this so-called "opinion" was supposedly based. That itself was an incomplete and misleading representation

---

[4] Conn knew that this information was material. First, Conn was so concerned that it would affect Sherman's decision-making that it instructed Garnet to conceal it. Second, Section 4.4 of the PSA required Conn to provide Sherman with "prompt reasonable notice of any demand letters threatening to sue" Conn, and "any filed lawsuits . . . regarding the Accounts." (FD, Ex. 1, p. 7.) Conn never notified Sherman of TF LoanCo's demand letter or anything about the TF LoanCo Litigation.

that is actionable.  *Hoggett*, 971 S.W.2d at 487 (stating that when a party makes "a partial disclosure and conveys a false impression," a duty to disclose arises).

**B.     The Undisputed Facts Show that Conn Knew the "Unable to Fund" Representation Was False and Recklessly Instructed Garnet to Make It Anyway.**

It is undisputed that even before approaching Sherman, Conn explicitly instructed Garnet to tell Sherman only that the prior purchaser was "unable to fund."  That representation was indisputably false.  Conn and Garnet each concede that TF LoanCo never told them that it was "unable to fund."  The evidence demonstrates that, at all relevant times, TF LoanCo had the financial ability to close on future deliveries.  (Dkt. #64 ¶ 26.)

Conn knew that its representation about TF LoanCo being "unable to fund" was false or made without any reasonable basis.  TF LoanCo told Conn and Garnet, in writing, that it was refusing further deliveries based upon alleged breaches of Conn's representations and warranties. (Dkt. #66-5 at 30:14-20; Dkt. #66-11.)  There is no evidence that TF LoanCo ever said anything about a supposed inability to fund.  These facts show that Conn ***at least*** instructed Garnet to make the "unable to fund" representation "recklessly without any knowledge of the truth and as a positive assertion," which under Texas law suffices for a fraud claim.  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011) (internal citations omitted). Conn had no basis for this representation other than its "belief," as it tacitly acknowledges in its brief (Dkt. #68, p. 3), and should have known that it was false.

**C.     The Undisputed Facts Show that Conn Intended All Along that Sherman Would Rely and Act Upon Its Misrepresentations and Non-Disclosures.**

Conn intended all along that Sherman would rely upon its misrepresentations and omissions regarding TF LoanCo.  Conn was so concerned that Sherman would ask what had happened to the prior purchaser that it carefully instructed Garnet what to tell – and what not to

11

tell – Sherman before Mr. Faliero ever asked.  (Dkt. #64 ¶ 24.)  As its former General Counsel, Robert Bell, put it, Conn "knew that question would come" even before Garnet approached Sherman and explicitly instructed Garnet to make only the "unable to fund" misrepresentation. (12/21/16 Heinen Decl., Ex. B, Bell Dep. at 121:6; Dkt. #66-4 at 54:15-55:1, 331:16-332:6.) This scripted response to Sherman's anticipated question plainly demonstrates Conn's intent and expectation that Sherman would rely on its representation in agreeing to enter into the PSA.

Texas has adopted section 531 of the Restatement (Second) of Torts, which addresses fraudulent intent.  Under that provision, fraudsters are liable "to the persons or class of persons whom he intends or has reason to expect to act or to refrain from action in reliance upon the misrepresentation…" *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 922 n. 14 (Tex. 2010).  This reliance "must be especially likely and justifiable, and the transaction sued upon must be the type the defendant contemplated." *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 580 (Tex. 2001).  The undisputed facts easily satisfy this standard.

Conn and Garnet took the time to concoct the "unable to fund" response in order to make Sherman believe that TF LoanCo's decision had nothing to do with the accounts themselves. Conn knew that if TF LoanCo had stopped purchasing due to a problem with the accounts, Sherman "would absolutely not bid and not purchase."  (Dkt. #66-6 at 106:17-21.)  Conn and Garnet crafted what to say in response to this question because they knew it would impact Sherman's decision in precisely this way.[5]

---

[5] Conn portrays the fact that Conn "declined to accept" Sherman's April bid for the portfolio as evidence that there was no "pattern of intentional fraud."  (Dkt. #68, p. 16.)  This ignores the reality that Conn merely accepted the highest overall bid (TF LoanCo's).  When TF LoanCo subsequently accused Conn of fraud, Conn then turned around and induced Sherman to purchase the Accounts by lying and concealing all material information about TF LoanCo.  Conn's actions demonstrate a pattern of intentional fraud.

**D.     The Undisputed Facts Show that Sherman Relied on Conn's Representations as a Matter of Law.**

Sherman believed and relied upon Conn's representation about the prior purchaser's supposed inability to fund.  Sherman did not know the prior purchaser's identity.  Conn was its only reasonable source of information as to why the Accounts were back on the market.  Sherman asked the right questions and entered into the PSA relying on Conn's answer.  Had Sherman known the truth, it would not have entered into the PSA without additional diligence and perhaps not at all.  (FD ¶ 29.)  Conn concedes in its brief that when a misrepresentation induces a party to enter a contract, as it did here, it is material, "even if it is not the party's sole inducement to do so."  (Dkt. #68, p. 17, citing *Brush v. Reata Oil and Gas Corp.*, 984 S.W.2d 720, 727 (Tex. App. 1998, pet. denied)).

The undisputed facts demonstrate that Conn instructed Garnet to make false representations about TF LoanCo's inability to fund, and to conceal all other material information about TF LoanCo from Sherman.  Conn knew this representation was false, misleading and incomplete.  Sherman relied upon Conn's representation, and was severely damaged as a result.  Sherman has established every element of its fraudulent inducement claim as a matter of law.  Therefore, its motion for summary judgment should be granted, and Conn's motion for partial summary judgment should be denied.

**II.     NEITHER SECTION 7.1 NOR SECTION 7.5 OF THE PSA EXCUSE OR NEGATE CONN'S TEXTBOOK FRAUDULENT INDUCEMENT.**

Conn invokes two clauses from the PSA in an attempt to escape liability for its fraudulent conduct, the "anti-reliance" clause in Section 7.1 (which was not pleaded in Conn's answer to Sherman's counterclaims) and the "as-is" clause in Section 7.5.  Neither gave Conn a license to lie in response to Sherman's specific inquiry about the prior purchaser, nor to make a misleading partial disclosure, omitting information Conn knew was highly material.

13

**A.      Conn Waived the Affirmative Defense of Disclaimer as to Sherman's Fraudulent Inducement Claim by Failing to Plead It.**

Conn did not plead Section 7.1 of the PSA as a defense to Sherman's counterclaims in its February 16, 2016 "Answer to Defendant's Original Counterclaims."  (Dkt. #51, pp. 10-12.) Federal Rule of Civil Procedure 8(c)(1) requires that "[i]n responding to a pleading, a party must affirmatively state any avoidance or affirmative defense…"  Failure to plead an affirmative defense "constitutes waiver."  *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999); *see also MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 135 (Tex. 2014) (explaining that "disclaimer of reliance is an affirmative defense that must be pleaded, as several Texas decisions recognize," and "[s]ince an affirmative defense raises additional issues of fact, Rule 94 demands that it appear in a pretrial pleading."); *see also Samedan Oil Corp. v. Intrastate Gas Gathering, Inc.*, 78 S.W.3d 425, 441 (Tex. App. 2001) (explaining that "disclaimer of reliance is an affirmative defense that must be pleaded or it is waived") (internal citation omitted).

While Conn mentioned the defense of "disclaimer" in its reply to Sherman's counterclaims, it specifically limited that defense to "the issue of breach of warranties or representations" (Dkt. #51 at 12), without mention of Sherman's fraud claims, which Sherman's counterclaim pleaded in detail (Dkt. #46 at 8-31).  Furthermore, Conn pleaded "disclaimer" only under Section 7.5 of the PSA, not Section 7.1.  (Dkt. #51 at 12.)  Conn's failure to plead Section 7.1 as an affirmative defense of disclaimer to Sherman's fraudulent inducement claim waives this defense.

**B.      Section 7.1 of the PSA Fails to Immunize Conn's Fraud.**

Even had it not been waived, Conn's argument under Section 7.1 fails.  Section 7.1 is a boilerplate buyer's representation, entitled "Independent Evaluation."  Among other things,

Section 7.1 represents that the buyer (Sherman) did not rely on extra-contractual statements by

Conn and certain of its representatives:

> Buyer has relied solely on its own investigation and has not relied
> upon *any oral or written information provided* by *Seller or its
> personnel, agents, representatives or independent contractors*
> (including information contained in the Offering Memorandum)
> other than those representations and warranties contained in this
> Agreement.  Buyer acknowledges and agrees that no *employee,
> agent, representative or independent contractor of Seller* has been
> authorized to make, and that Buyer had not relied upon, *any
> statements* other than those specifically contained in this
> Agreement.

(FD, Ex. 1, p. 10 (emphasis added).)  Such provisions do not provide carte blanche to commit

fraud.  Moreover, Section 7.1 does not reference the prior purchaser, nor any omissions by Conn,

and it explicitly excludes Garnet by its terms.  As a result, Section 7.1 is no bar to Sherman's

fraudulent inducement claim.

### 1. "Anti-Reliance" Clauses Like Section 7.1 Do Not Automatically Bar Fraud Claims.

Conn overstates Texas law when it argues that contractual disclaimers of reliance

"preclude[] claims of both fraudulent inducement and nondisclosure."  Texas courts have

repeatedly held that anti-reliance clauses will not automatically negate the reliance element of a

fraud claim.  *See Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 61 (Tex. 2008) ("Today's holding

should not be construed to mean that a mere disclaimer standing alone will forgive intentional

lies regardless of context.  We decline to adopt a per se rule that a disclaimer automatically

precludes a fraudulent-inducement claim…"); *see also Duke Energy Int'l, L.L.C. v. Napoli*, 748

F. Supp. 2d 656, 670-71 (S.D. Tex. 2010) (noting that "the Texas Supreme Court was clear in

[*Schlumberger* and *Forest Oil*] that it did not announce a 'per se rule that a disclaimer

automatically precludes a fraudulent-inducement claim,' but rather held merely that, on the

records presented in those cases, such claims were barred.").  Indeed, even as Conn later

acknowledges, "[a] disclaimer of reliance or merger clause will ***not always*** bar a fraudulent inducement claim." (Dkt. #68 at 10 (emphasis added).)[6]

*Forest Oil* holds that, in order for a reliance disclaimer to be valid, it is critical that "during negotiations the parties specifically discussed the issue which has become the topic of the subsequent dispute." *Forest Oil*, 268 S.W.3d at 60. The party agreeing to the clause must be aware of the representations they were allegedly disclaiming reliance upon. *See McLernon v. Dynergy, Inc.*, 347 S.W.3d 315, 331 (Tex. App. 2011) ("The significant point with respect to the *Forest Oil* factors is that [the claimant] was aware of [the] specific representations concerning the topic of the present dispute yet elected to disclaim reliance on those representations.") Here, Sherman was unaware of the truth of what had transpired with TF LoanCo; Conn intentionally concealed that information and the parties never discussed it. A boilerplate disclaimer of reliance not tied to any specific representation by Conn cannot nullify Sherman's reliance.

Moreover, Texas courts have endorsed fraud actions where, as here, the seller has special knowledge of facts not available to the buyer, or where the seller actively impairs the buyer's investigation (here, by lying). *See Paull v. Capital Res. Mgmt.*, Inc., 987 S.W.2d 214, 219 (Tex. App. 1999) ("When a speaker purports to have special knowledge of the facts, or does have superior knowledge of the facts--for example, when the facts underlying the opinion are not equally available to both parties--a party may maintain a fraud action."); *see also Smith v. Nat'l Resort Cmtys., Inc.*, 585 S.W.2d 655, 658 (Tex. 1979) (holding that a seller of real estate may

---

[6] It is noteworthy that *Schlumberger*, *Forest Oil*, and *Italian Cowboy*, the three most recent Texas Supreme Court cases to consider fraud claims and anti-reliance clauses, all addressed disclaimers of reliance in the context of settlement agreements. Although the Texas Supreme Court did not limit its analysis to the settlement context, its "concern" about "the ability of parties to fully and finally resolve all disputes between them" as "parties should be able to bargain for and execute a release barring all further dispute" clearly motivated its decisions. *Italian Cowboy*, 341 S.W.3d at 332. These concerns are not present in the context of an ongoing commercial contract like the PSA.

commit fraud by failing to disclose material facts which would not have been discoverable by a buyer, or which could not be uncovered by a reasonable investigation).

For example, in *Jackson Fulgham dba Commerce St. Partners v. Allied Prop. & Cas. Ins. Co.*, No. 05-14-00189-CV, 2015 Tex. App. LEXIS 5463, at *9 (May 28, 2015), the plaintiff intentionally frustrated its insurer's investigation of damage to a building, including by instructing his employee on how he should answer any questions from the adjuster. *Id*. at *10- *11. After the insurer counterclaimed for fraud, the plaintiff argued that the insurer could not have relied on his false statements because it conducted its own investigation. *Id*. at *5-*7. The court rejected this argument, which "does not account for the prospect of fraud directed at the investigation itself," holding that "[a] party who claims to have been defrauded and conducted his own investigation will not be prevented from relying on representations made to him by the alleged fraudster so long as the party was hindered or hampered in his investigation by the alleged fraudster or did not rely solely on his investigation." *Id*. at *7-*9. Similarly, Sherman relied upon the misrepresentation (and omissions) made by Garnet in response to Sherman's inquiry regarding TF LoanCo. Sherman had no means of discovering the true facts other than Conn. Conn cannot plausibly argue that Sherman disclaimed reliance on facts that Sherman could not have discovered and regarding which Conn actively misled Sherman.

Courts in other states have taken the next logical step and held that "anti-reliance" clauses will not bar fraud claims where the subject matter of the fraud is within the peculiar knowledge of the misrepresenting party and the deceived party has no realistic independent means of ascertaining its truth. *See, e.g., DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999) (denying motion to dismiss where trier of fact could find that defendants' fraud was so well concealed that it was within defendants' exclusive knowledge, despite plaintiff's sophistication);

*see also Harbinger Capital Partners Master Fund I, Ltd. v. Wachovia Capital Markets, LLC*, 27 Misc. 3d 1236(A), 910 N.Y.S.2d (N.Y. Sup. Ct. 2010) (denying motion to dismiss as peculiar knowledge exception can apply both when facts are within the exclusive knowledge of the defendant and where the truth theoretically might have been discovered, but only with great difficulty). Although Texas courts have not yet considered the so-called "peculiar knowledge exception," the Texas Supreme Court would likely find it consonant with the principle articulated repeatedly in Texas cases that fraud actions may be maintained when the fraudster has superior knowledge of the facts and conceals them.[7] *See Paull*, 987 S.W.2d at 219 (citing *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983)).

Here, Sherman made a specific inquiry about why the "prior purchaser" (whose identity was unknown to Sherman) refused to close on further deliveries. All of the material information about the prior purchaser was within the peculiar knowledge of Conn and Garnet. Conn chose to defraud Sherman and impair its investigation by lying. In light of these facts, the PSA's boilerplate anti-reliance language cannot bar Sherman's fraud claim as a matter of law.

### 2. Section 7.1 Does Not Disclaim Reliance on Conn's Material Omissions.

Conn ignores the fact that Section 7.1 does not apply to fraudulent omissions. When Texas courts have held that "anti-reliance" and merger clauses apply to claims of fraud by non-disclosure, the clauses at issue have generally explicitly disclaimed reliance on omissions as well as affirmative representations. *See Newman v. Firstmark Credit Union*, No. 03-14-00315-CV, 2015 Tex. App. LEXIS 8802, at *8 (Tex. App. Aug. 21, 2015) (holding that an anti-reliance

---

[7] As the Texas Supreme Court has not yet ruled on this specific issue, the Court's role is to predict how the Texas Supreme Court would rule were it to consider the issue. *See Van Houten v. City of Fort Worth*, 827 F.3d 530, 533 (5th Cir. 2016).

clause precluded claims for "fraud in the inducement and fraud by nondisclosure" where the anti-reliance clause disclaimed reliance on "any representations *or omissions . . . .*") (emphasis added); *cf. Coastal Bank SSB v. Chase Bank of Tex., N.A.*, 135 S.W.3d 840, 844 (Tex. App. 2004) (addressing reliance disclaimer based upon clause stating "[Chase] shall not have any liability for any representations (express or implied) contained in, *or for any omissions from*, this Confidential Memorandum…") (emphasis added).

Where the anti-reliance clause does not expressly encompass omissions, it will not bar claims for fraudulent and material omission.  For example, in *S.A.H.H. Hosp. Mgmt., LLC v. San Antonio Hosp. Mgmt., Inc.*, No. SA-12-CV-1069-XR, 2013 U.S. Dist. LEXIS 151881, at *8 (W.D. Tex. Oct. 22, 2013), the court considered a clause stating that "no oral prior written statement not specifically incorporated herein shall be of any force and effect."  The court held that this clause was ineffective to disclaim reliance, as the subject of the dispute had not been discussed by the parties.  The Court further noted that even if the clause had been "effective in disclaiming reliance on prior written and oral statements, by its own terms it does not disclaim reliance on prior omissions."  *Id.*  The court saw "no reason why it should construe [the clause] broadly to preclude fraudulent omission claims" particularly as "[t]he case law analyzing waiver of reliance provisions appears exclusively focused on contractual provisions that disclaim reliance on affirmative representations, not omissions."  *Id.*  Similarly, Section 7.1 of the PSA references only "oral or written information" and "statements," and does not mention omissions at all.

Sherman was not only unaware of all of the highly material information regarding TF LoanCo and its issues with the Conn accounts, which Conn actively concealed, but was also intentionally misled by Conn (through Garnet) about the prior purchaser.  As Conn concedes in

its brief, "there were no provisions in the contract [including Section 7.1] that discussed or made any representations as to the previous purchaser or the reasons for its discontinuance of performance." (Dkt. #68, p. 5.) Considering these facts, Sherman did not disclaim reliance upon Conn's intentional and fraudulent omissions regarding TF LoanCo.

Nor is this a case where the alleged non-disclosure is "simply the converse" of a fraudulent misrepresentation. *See Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). *Schlumberger* merely stated that under the facts of that case, the plaintiff's non-disclosure allegations were the converse of the alleged misrepresentations, and therefore also barred by the contract – not that every fraud case would present that situation. *Id.*, 959 S.W.2d at 182.[8] Here, the misrepresentation made by Conn was that TF LoanCo was "unable to fund," meaning it lacked the financial resources to close on additional deliveries. The converse of this misrepresentation would be that TF LoanCo did in fact have the ability to fund further deliveries. By contrast, Conn fraudulently concealed and omitted months of serious account-related issues that TF LoanCo had raised, the negotiations and demand letters between the parties, and the fact that Conn had already sued TF LoanCo.

### 3.    Section 7.1 Does Not Apply to Statements by Garnet.

It is undisputed that before Garnet even approached Sherman in August, 2014, Conn had instructed and authorized Garnet to represent to Sherman that TF LoanCo was "unable to fund." (Dkt. #64 ¶ 24.) Construing the PSA as a whole, Section 7.1 does not apply to any

---

[8] As a result, the court's holding in *Cronus Offshore, Inc. v. Kerr McGee Oil & Gas Corp.*, 369 F. Supp. 2d 848, 859 (E.D. Tex. 2004), *aff'd* 133 F. App'x 944 (5th Cir. 2005), overstated *Schlumberger*'s holding when it stated that "nondisclosures are merely the converse of misrepresentations and are subsumed under any contract language disclaiming reliance on affirmative statements." While *Schlumberger* holds that, under the facts of that case, those nondisclosures were the converse of misrepresentations, nowhere did the court state that ***all*** nondisclosures would automatically fall under this doctrine.

representations by Garnet, as Sherman outlined in its summary judgment motion.  (Dkt. #64, pp. 16-17.)  Conn authorized Garnet to be the exclusive intermediary between Conn and potential buyers of the Accounts.  In fact, the purpose of Conn paying Garnet to be its Loan Sale Advisor was so Garnet could interface with prospective buyers, rather than Conn.  Garnet's role, according to the testimony of its managing partner, Robin Ishmael, is to be in the middle between the seller and potential buyers, either answering questions directly or itself taking the buyer's questions to the seller and circling back to the buyer with the answer.  (Dkt. #66-4 at 76:4-77:13.)  This meant that neither Sherman nor TF LoanCo interacted directly with Conn employees until long after their respective transactions had closed, when issues persisted that the parties could not resolve through Garnet.

As a result, Conn knew and specifically intended that buyers like Sherman would rely on statements and information from Garnet.  For that reason, the PSA carves Garnet out of Section 7.1.  Specifically, the PSA identifies Garnet exclusively through the use of a defined term, "Loan Sale Advisor."  (FD, Ex. 1, p. 3.)  Section 7.1 states only that Sherman has not relied on statements made by Seller or its "employees, agents, representatives or independent contractors." Its clear intent, like many reliance disclaimers, was to protect Conn from the risk of unauthorized statements made by non-designated Conn employees.  Section 7.1 makes no reference whatsoever to the "Loan Sale Advisor" and therefore no reference to Garnet.  Section 7.1 does not apply to Garnet and Sherman did not disclaim reliance on Garnet's representation (for which Conn is liable and responsible) that TF LoanCo was "unable to fund" or any other representation or omission by Garnet.

It is undisputed that Conn explicitly authorized Garnet to tell Sherman that TF LoanCo walked away from its deal because it was "unable to fund" additional deliveries, and Garnet has

testified that it was told by Conn to withhold all other information about TF LoanCo from Sherman.  Robin Ishmael, Garnet's corporate representative, testified to this effect repeatedly at her deposition.

> Q:  But sitting here now, what did Mr. Bell instruct Garnet to tell Sherman – to tell Sherman?
>
> A:  That Trax was having difficulty funding, which was one of the facts that we felt was very clear.  And limit it to the facts that we felt comfortable with.
>
> Q:  Did Mr. Bell tell you not to say anything other than that to Sherman?
>
> A: Whether he said explicitly or in so many words, the discussion was about what we were limiting the conversation to.

(Dkt. #66-4 at 54:15:55:1) (emphasis added).

Garnet's contractually-defined role as the "Loan Sale Advisor" meant that by design, it was the party to whom Conn **directed** Sherman (and other potential buyers) to ask questions during due diligence.  It could therefore have hardly been a surprise that Mr. Faliero did just that in asking Garnet why the prior purchaser backed out of the deal.  Section 7.1's language reflects the reality of Garnet's role in the due diligence process, and its general "anti-reliance" language cannot negate Sherman's ability to rely on representations that Garnet made at Conn's specific instruction in order to respond to a specific inquiry by Sherman for information that Sherman could not otherwise obtain.

Nothing in the PSA precludes Sherman's fraud claim, and Conn's motion for summary judgment should be denied.

### C.     Section 7.5 of the PSA Is Irrelevant to Conn's Fraud Regarding TF LoanCo.

Section 7.5 of the PSA is an "as is" clause containing specific warranties by Conn regarding the Accounts that Sherman purchased.  Conn's argument that this clause bars

Sherman's fraud claim covers less than half a page of its brief, and cites only the *Cronus Offshore, Inc.*, 369 F. Supp. 2d 848, case.[9]  (Dkt. #68, pp. 12-13.)  Section 7.5 has nothing to do Conn's misrepresentations regarding TF LoanCo, and in no way prevents Sherman's fraud claim.

The intent of Section 7.5 is plain:  Conn wanted a warranty that it was only making certain representations as to the Accounts and was not, for example, representing that Sherman would be able to collect the full amount due on each Account.  Section 7.5 is completely generic; it makes no mention of the prior purchaser, and does not impact Sherman's justifiable reliance on Conn and Garnet's "unable to fund" misrepresentation and non-disclosure.  If Section 7.1 does not bar Sherman's fraud claim, Section 7.5 certainly does not.[10]

Texas courts do not look kindly on sellers that procure "as is" clauses through fraud and then hope to rely on them to escape liability.  Under Texas law, "[a] buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller."  *Duke Energy Int'l, L.L.C.*, 748 F. Supp. 2d at 669 (internal citations omitted); *see also Prudential Ins. Co. of Am. v. Jefferson Assocs.*, 896 S.W.2d 156, 162 (Tex. 1995) ("A buyer is not bound by an agreement to purchase something 'as is' that he is induced to make because of a fraudulent representation or concealment of information by the seller.  Seller cannot have it both ways:  he cannot assure the buyer of the condition of a thing to obtain the buyer's agreement to purchase 'as is', and then disavow the assurance which procured the 'as is' agreement.").  Section 7.5 has no textual or

---

[9] Conn's argument on this point is so cursory that the Court could consider it "inadequately presented," in which case it is "deemed not briefed" and not considered by the Court.  *See In re Hunt*, 124 B.R. 200, 210 n.11 (N.D. Tex. 1991).

[10] Furthermore, Section 7.5 specifically excludes the representations "provided in this agreement," meaning it has no bearing on the remainder of Sherman's claims either.  (Dkt. #68, pp. 12-13.)

logical relationship to Conn's misrepresentations and omissions about TF LoanCo.  Conn's motion for partial summary judgment should be denied.

## CONCLUSION

Sherman respectfully requests that the Court deny Conn's motion for partial summary judgment, grant Sherman's motion for summary judgment (Dkt. #64), and award Sherman its attorneys' fees, costs and such other and further relief as the Court deems just and proper.

Dated:  December 21, 2016

Respectfully submitted,

BUCK KEENAN LLP

*/s/ William A. Gage, Jr.*
William A. Gage, Jr.
Attorney-in-Charge
Texas Bar No. 07566580
BUCK KEENAN, LLP
700 Louisiana, Suite 5100
Houston, Texas 77002
713.225.4500 Telephone
713.225.3719 Facsimile
gage@buckkeenan.com

Andrew J. Wronski (admitted *pro hac vice*)
Elizabeth A. N. Haas (admitted *pro hac vice*)
Gregory N. Heinen (admitted *pro hac vice*)
FOLEY & LARDNER LLP
777 East Wisconsin Avenue
Milwaukee, WI 53202-5306
414.271-2400 Telephone
414.297.4900 Facsimile
awronski@foley.com
ehaas@foley.com
gheinen@foley.com

COUNSEL FOR SHERMAN ORIGINATOR III, LLC

SHERMAN'S OPPOSITION TO CONN'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Sherman Originator III, LLC's Opposition to Conn's Motion for Partial Summary Judgment was served on all counsel of record in this cause by the Clerk's ECF system on December 21, 2016.

**By ECF System**

**COUNSEL OF RECORD**

J. Thad Heartfield
M. Dru Montgomery
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318
thad@heartfieldlawfirm.com
dru@heartfieldlawfirm.com

*/s/ William A. Gage, Jr.*
William A. Gage, Jr.