```
 1            UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF TEXAS
 2                   HOUSTON DIVISION
    CONN CREDIT I, LP,              )
 3                                  )
       Plaintiff and                )
 4  Counter-Defendant,               )
                                    )
 5  VS.                             ) Civil Action No.
                                    ) 4:15-cv-03713
 6  SHERMAN ORIGINATOR III LLC,     )
                                    )
 7     Defendant and                 )
    Counterclaimant.                )
 8                                  )

 9       ------------------------------------------

10           ORAL/VIDEOTAPED DEPOSITION OF

11                   ROBERT F. BELL

12                 SEPTEMBER 15, 2016

13       ------------------------------------------

14       ORAL/VIDEOTAPED DEPOSITION OF ROBERT F. BELL,

15  produced as a witness at the instance of DEFENDANT, and

16  duly sworn, was taken in the above-styled and numbered

17  cause on September 15, 2016, from 8:58 a.m. to 2:21

18  p.m., before Michelle Rodriguez, CSR in and for the

19  State of Texas, recorded by machine shorthand, at the

20  offices of 363 North Sam Houston Parkway East, Suite

21  1200 Houston, Texas 77060, pursuant to the Texas Rules

22  of Civil Procedure and the provisions stated on the

23  record or attached hereto; that the deposition shall be

24  read and signed before any notary public.

25                 JOB NO. 1-HOU-223519
```

U.S. LEGAL SUPPORT
(713) 653-7100

EXHIBIT B

1  an interest.
2     Q.  All right.  Do you know when -- was it you that
3  instructed Garnet or authorized Garnet to go back to
4  Sherman and make that inquiry?
5     A.  Is the question did I --
6     Q.  Were you the one who told --
7     A.  Garnet --
8     Q.  -- conveyed it to Garnet?
9     A.  To make the inquiry to go back to Sherman?
10    Q.  Yes.
11    A.  Based on conversation with management and the
12 directions that they gave me.
13    Q.  Okay.  So when did you give Garnet that
14 instruction?
15    A.  I don't recall the exact date.  Again, it's
16 sometime, you know, in the period after TF LoanCo had
17 breached and filed suit.
18    Q.  Okay.  And by this point, is it fair to say
19 that you're the primary point of contact between Conn's
20 and Garnet with respect to this sale?
21    A.  I was having -- I was having conversations with
22 Garnet conveying, you know, the direction that
23 management, you know, directed me that they wanted to
24 proceed.
25    Q.  Okay.  When you were discussing with management

1   and management is evaluating whether to go back to
2   Sherman, was it discussed at Conn's, "What are we going
3   to tell Sherman about why the prior deal didn't close,
4   why these things are back in the market?"
5        A.   We discussed -- yes, we discussed -- because we
6   knew that question would come.  So we discussed how to
7   evaluate and really the reasons why the portfolio for
8   this particular flow were back on the market.
9        Q.   And who was involved in those discussions?
10       A.   The discussions around --
11       Q.   About what to tell Sherman when they asked the
12  question, "Why are these back on the market?"
13            MR. MONTGOMERY:  Form.
14       A.   I had discussions with Garnet, had discussions
15  with Mr. Poppe --
16       Q.   (BY MR. WRONSKI)  Anyone else involved in those
17  discussions?
18       A.   Those are -- those are the primary.
19       Q.   Okay.
20       A.   That I can recall.
21       Q.   Okay.  And did you have any of those
22  discussions before you authorized and before Conn's
23  authorized Garnet to go back to Sherman?
24       A.   I do not believe we did.
25            MR. WRONSKI:  Okay.  Change -- let's go off