UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| CONN CREDIT I, LP,<br><br>    Plaintiff-Counter-Defendant,<br><br>v.<br><br>SHERMAN ORIGINATOR III LLC,<br><br>    Defendant-Counter-Plaintiff. | Case No. 4:15-cv-3713 |

# **SHERMAN'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Conn's response to Sherman's summary judgment motion plays fast and loose with the facts, the language and structure of the PSA, and the requirements of the TSCRA. Conn lied to Sherman about why TF LoanCo refused to accept additional accounts, and Conn was legally required to credit its customers' accounts when it cancelled unexpired RSAs at charge-off. As a result, Sherman is entitled to summary judgment on all claims in this action as a matter of law.

## I.   THE UNDISPUTED FACTS ESTABLISH CONN'S FRAUD.

Conn lied to Sherman in response to a direct inquiry about why TF LoanCo refused to accept additional accounts, telling Sherman only that TF LoanCo was "unable to fund." Conn tries to suggest that its representation is somehow disputed, noting that Garnet "apparently" told Sherman TF LoanCo was "unable to fund." (Dkt. #73, p. 3.) That fact is undisputed and established by the unambiguous testimony of Sherman, Garnet, and Conn. (Dkt. #64, ¶ 25.) Conn presents no contrary evidence, much less that sufficient to create a fact dispute.[1]

Unable to disavow its false representation of fact, Conn's seeks to retool it as an honest "belief," pointing to an email exchange with TF LoanCo as evidence. (Dkt. #73, p. 15; Dkt. #74, Ex. 9.) Conn never expressed TF LoanCo's alleged inability to fund as an "opinion" or "belief," but presented it as an unqualified fact. Moreover, Conn embellishes the TF LoanCo email exchange by ignoring TF LoanCo's unequivocal statement that it "can clearly see there are many material misrepresentations and issues which make it virtually impossible to continue under the structure purchase format of the current PSA." (Dkt. #74, Ex. 9.) TF LoanCo refused to fund

---

[1] Sherman has exhaustively addressed Conn's argument that Sections 7.1 and 7.5 of the PSA preclude proof of reliance elsewhere. (*See* Dkt. #64, pp. 11-17, Dkt. #71, pp. 13-24.)

because the accounts were riddled with problems and TF LoanCo did not get what it paid for. Conn shared none of this and intentionally misled Sherman.[2] That is fraud.

## II. CONN MATERIALLY BREACHED THE PSA AS A MATTER OF LAW.

It is undisputed that more than 64% of the Accounts that Conn delivered to Sherman had materially inaccurate balances due to Conn's admitted failure to credit those Accounts after cancelling unexpired RSAs, as Texas law requires. Conn's argument that no credits were due because the customers did not "really" pay for those RSAs strains credulity, contradicts the testimony of its witness and is belied by Conn's own conduct. All this was in addition to the breaches caused by the unprecedented dispute rate that Sherman experienced when it tried to collect the Accounts. These breaches were material as a matter of law, and Sherman is entitled to repurchase of the Accounts as the PSA's sole and exclusive remedy.

### A. Conn's Admitted Failure to Apply RSA Credits Breached the PSA.

Conn sold RSAs to its customers. The RSAs are "service contracts" subject to the Texas Service Contract Regulatory Act ("TSCRA"), which requires Conn to issue a pro-rata refund if the RSA is cancelled before it expires. *See* Tex. Occ. Code §§ 1304.101-105; 1304.003(a)(2); *see also* Dkt. #74, Ex. 12, pp. 11-13. With respect to the Accounts, Conn cancelled any RSAs upon charge-off. Some 64% of the Accounts that Conn delivered to Sherman had RSAs as of charge-off. Conn did not credit the balance of these Accounts as Texas law requires, and did not tell Sherman that the Accounts had inaccurate balances and included amounts that Texas law

---

[2] Contrary to Conn's mischaracterization of *Hoggett v. Brown*, 971 S.W.2d 472 (Tex. App. 1997), a fiduciary relationship (although sufficient) is not necessary to create a duty of disclosure. Rather, "when one voluntarily discloses information, the whole truth must be disclosed and "when one makes a partial disclosure and conveys a false impression," a duty to disclose arises. *Id.* at 487.

compelled be credited to the consumer.  Sherman did not learn of these inaccurate balances until after this litigation began.

Conn does not dispute any of this.  Instead, it disingenuously claims that customers who bought RSAs on credit did not "pay" for them and, as a result, Conn was not required to credit their accounts.  Unfortunately for Conn, its Rule 30(b)(6) witness, Mr. Clint Walton, testified unequivocally that all customers pay upfront for RSAs, whether purchased with cash or credit:

> Q: Okay.  So you pay – you pay the full, upfront cost one way or the other, either through a loan from you or with your own funds?
>
> A: That's correct.

(Dkt. #66-1 at 125:1-8; *see also* Dkt. #73, p. 8.)

Conn's current position makes no sense.  Assume that a customer purchases a $1,000 television using Conn's credit and returns the television the next day, still in the unopened box. Conn would be required to credit (reduce) the balance of that customer's account.  Conn could not keep the television and collect $1,000 on the customer's account.  Yet, that is precisely what Conn claims it can do if the customer purchases an RSA on credit.  Nothing in the TSCRA draws a distinction between cash and credit purchases, and Conn cites no authority for that position, other than Judge Clark's erroneous and non-binding decision in the TF LoanCo Litigation.[3]

Conn's own conduct belies its argument here.  Conn began crediting customer accounts for cancelled RSAs in August 2015, though it did so only a prospective basis (and without

---

[3] Conn's argument that the Texas Commission of Licensing and Regulation must determine violations of the TSCRA is a red herring.  (Dkt. #73, pp. 18-19.)  Sherman is not suing under the TSCRA.  Rather, Conn's failure to comply with the TSCRA rendered the Account balances materially inaccurate, breaching its contractual representations.  For these reasons, it is irrelevant whether Conn's retail installment contract would require such a credit (Dkt. #73, p. 9), because the law and specifically the TSCRA unambiguously requires Conn to issue a credit.

notifying Sherman). (Dkt. #73, p. 10.) After Sherman discovered the issue, Conn was forced to have its damages expert credit the Sherman Accounts in calculating Conn's alleged damages, conceding that the Account balances were inaccurate and inflated. (Dkt. #66-20, #66-21.) Conn finally did what the law has always required. By failing to credit the Accounts before delivery to Sherman, Conn materially breached its representations in §§ 8.5, 8.6 and 8.7 of the PSA.[4]

### B.  Repurchase Is Sherman's Sole and Exclusive Remedy for Conn's Breaches.

Section 9.4 of the PSA unambiguously provides that repurchase is the sole and exclusive remedy for any breach of Conn's contractual representations. Indeed, it is titled "Repurchase of Accounts as Exclusive Remedy." That Sherman is entitled to repurchase of the Accounts could not be more clear. Nonetheless, Conn asks the Court to ignore Section 9.4's unambiguous dictate and apply other provisions of the PSA that, according to Conn, provide for "post-closing credit adjustments." (Dkt. #73, pp. 7-10, 20-21.) The only one of these that Conn actually addresses[5] is Section 2.6. Notably, that provision is not in Article III of the PSA (which addresses "Post-Closing Matters"). Section 2.6 applies only where a consumer makes a payment

---

[4] The RSA issue, of course, was on top of the unprecedented dispute rate that Sherman encountered when it began collecting the Accounts, which also resulted in breaches of Conn's contractual representations. Sherman calculated the dispute rate based on "right party contacts" or successfully contacted consumers. In Sherman's experience, the rate was astronomical and required Sherman to cease all collection activity. (Dkt. #64, pp. 9-10, 21-24.) Conn attempts to minimize the dispute rate by recalculating it as a percentage of the total number of Accounts that Sherman purchased (Dkt. #73, p. 7), and comparing it to the dispute rate (calculated after two years of collections) on a different Conn portfolio that Sherman purchased in 2012 (Dkt. #71, p. 5). That comparison is inapposite and irrelevant. Had Sherman continued (contrary to law) to collect the Accounts in this transaction, it would have received many more disputes (and eventually discovered the RSA issue), and the dispute rate would have dwarfed what Sherman experienced in 2012. Indeed, Conn concedes that 64% of the Account balances were inaccurate based on the RSA issue alone.

[5] Conn lists (but does not discuss) other provisions of the PSA, §§ 3.2-3.3 (post-closing documents and notices), 4.5 (use of seller's name), and 6.1 (repurchase of individual accounts). (Dkt. #73, pp. 7-8.) None of these has anything to do with materially inaccurate and inflated Account balances.

on an Account on or shortly before the day of delivery that (due to timing) is not reflected in the balance reported to Sherman or where a payment previously credited to an Account must be reversed (because, for example, a check bounced). Section 2.6 is obviously intended to address one-off, non-material adjustments caused by timing that can be addressed administratively. Nothing in Section 2.6 has any bearing on material inaccuracies in more than 64% of the Accounts delivered to Sherman as a result of Conn's clear failure to comply with Texas law. Section 2.6 does not immunize Conn's clear and far-reaching contractual breaches.[6] Rather, Section 9.4 prescribes Sherman's sole and exclusive remedy: repurchase of the Accounts.

### C. Conn's Breaches of the PSA Were Indisputably Material.

Conn's representations that the Accounts were valid and enforceable, with accurate account balances, were essential to the transaction.[7] That is why they are in the PSA. Sherman's fundamental expectation was that it would be able to attempt collection of every Account. As Conn has admitted, the balances reported on the Computer File for at least 64% of the accounts were inaccurate and overstated by some $5 million in the aggregate, without quantifying the flood of other disputes that Sherman received. These breaches were material and destroyed Sherman's ability to receive the economic benefit of its bargain. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004). As a result, Sherman was entitled to cease performance, and is further entitled to repurchase under Section 9.4 of the PSA.

---

[6] Conn never credited or offered to credit Sherman for any portion of the purchase price relating to the RSAs until Sherman demonstrated Conn's failure to follow Texas law in this case.

[7] Contrary to Conn's strawman, an Account need not be "illegal" or "void" in order for Conn to breach its contractual representations. Because the balances for 64% of the Accounts were materially inaccurate, the Accounts could not be enforced by Sherman, which breached Conn's representations.

Dated:  January 4, 2017	Respectfully submitted,

                                          **BUCK KEENAN LLP**

                                          */s/ William A. Gage, Jr.*
                                          William A. Gage, Jr.
                                          Attorney-in-Charge
                                          Texas Bar No.  07566580
                                          BUCK KEENAN, LLP
                                          700 Louisiana, Suite 5100
                                          Houston, Texas 77002
                                          713.225.4500 Telephone
                                          713.225.3719 Facsimile
                                          gage@buckkeenan.com

                                          Andrew J. Wronski (admitted *pro hac vice*)
                                          Elizabeth A. N. Haas (admitted *pro hac vice*)
                                          Gregory N. Heinen (admitted *pro hac vice*)
                                          FOLEY & LARDNER LLP
                                          777 East Wisconsin Avenue
                                          Milwaukee, WI 53202-5306
                                          414.271-2400 Telephone
                                          414.297.4900 Facsimile
                                          awronski@foley.com
                                          ehaas@foley.com
                                          gheinen@foley.com

                                          COUNSEL FOR SHERMAN ORIGINATOR III, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Sherman Originator III, LLC's Reply Brief in Support of its Motion for Summary Judgment was served on all counsel of record in this cause by the Clerk's ECF system on January 4, 2017.

**By ECF System**

**COUNSEL OF RECORD**

J. Thad Heartfield
M. Dru Montgomery
THE HEARTFIELD LAW FIRM
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318
thad@heartfieldlawfirm.com
dru@heartfieldlawfirm.com

*/s/ William A. Gage, Jr.*
William A. Gage, Jr.

SHERMAN'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT