# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| CONN CREDIT I, LP, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-3713 |
| | § | |
| SHERMAN ORIGINATOR III LLC, | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This case is before the Court on the Motion for Summary Judgment ("Defendant's Motion") [Doc. # 64] filed by Defendant Sherman Originator III LLC ("Sherman"), to which Plaintiff Conn Credit I, LP ("Conn") filed a Response [Doc. # 73], and Sherman filed a Reply [Doc. # 77]. Also pending is Conn's Motion for Partial Summary Judgment ("Plaintiff's Motion"), to which Sherman filed an Opposition [Doc. # 71], and Conn filed a Reply [Doc. # 78]. Based on its review of the record and the applicable legal authorities, the Court **grants** Plaintiff's Motion and dismisses Defendant's fraudulent inducement counterclaim. The Court **denies** Defendant's Motion.

## I. BACKGROUND

Conn provides financing for customers who purchase household goods, such as washers, dryers, televisions, and furniture, at Conn's retail stores. Most of Conn's

customers are "sub-prime" customers for whom conventional financing is unavailable. Those Conn's customers often finance their purchase through Conn's in-house credit agreements, known as Retail Installment Sales Contracts ("RICs"). Many of Conn's customers obtain Repair Service Agreements ("RSAs") to cover repairs that a typical manufacturer's warranty would not cover. At the customer's option, the cost of the RSA may be included in the total amount financed under the RIC.

When a customer fails to make payments on the RIC for a certain amount of time, the account is "charged-off," *i.e.*, the account is taken as a loss and the customer retains the merchandise. In April 2014, Conn offered for sale a portfolio of delinquent consumer loan accounts that had been charged off. The portfolio included an initial bulk inventory of accounts ("Bulk Delivery"), plus monthly deliveries of future accounts (the "Flow"). Garnet Capital Advisors, LLC ("Garnet") served as the broker on Conn's behalf.

TF LoanCo was the successful bidder. On April 30, 2014, Conn and TF LoanCo entered into a Purchase and Sale Agreement, under which TF LoanCo would purchase the portfolio from Conn. TF LonaCo was to purchase the Bulk Delivery, followed by twelve monthly Flow deliveries. After Conn made the initial Bulk Delivery and the first two Flow deliveries, TF LoanCo refused to accept the remaining Flows. Conn sued TF LoanCo in the United States District Court for the Eastern

District of Texas.  *See Conn Credit I, LP v. TF LoanCo III, LLC*, Civil Action No. 1:14-cv-429 ("*TF LoanCo* Case").  TF LoanCo filed a counterclaim, asserting breach of contract and fraud based on the allegation that Conn improperly included a portion of terminated RSAs in the value of certain accounts.  The *TF LoanCo* Case was tried to the bench, United States District Judge Ron Clark presiding.  On November 17, 2016, Judge Clark issued Findings of Fact and Conclusions of Law in the *TF LoanCo* case, which are attached as Exhibit 12 to Conn's Response to Defendant's Motion.  Judge Clark held in favor of Conn on its breach of contract claim and on TF LoanCo's counterclaims.

Meanwhile, in September 2014, Conn entered into negotiations with Sherman to purchase a portfolio of charged-off accounts, including those that TF LoanCo purchased but refused to accept.  Conn and Sherman entered into a Purchase and Sale Agreement ("PSA") on September 15, 2014.  In November 2014, Sherman refused to accept delivery of the accounts in the third Flow (also referred to as the "October Delivery").

On January 7, 2015, Conn filed this breach of contract lawsuit against Sherman in the Eastern District of Texas.  Sherman requested, and United States District Judge Marcia Crone granted, transfer of the case to the Southern District of Texas, Houston Division.  Thereafter, Sherman filed its Answer and Counterclaims [Doc. # 46].

Sherman asserted a breach of contract claim against Conn, as well as a fraudulent inducement claim.

After the close of discovery, the parties filed their respective dispositive motions. The motions have been fully briefed and are now ripe for decision.

**II.     SUMMARY JUDGMENT STANDARD**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case for which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). In deciding a motion for summary judgment, the Court must determine whether the movant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp.*, 477 U.S. at 322-23; *Rodgers v. United States*, 843 F.3d 181, 190 (5th Cir. 2016); *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

The movant "bears the initial responsibility of demonstrating the absence of a genuine issue of material fact . . . ." *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718 (5th Cir. 1995); *see also Brandon v. Sage Corp.*, 808 F.3d 266, 269-70 (5th Cir.

2015); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the non-movant's response. *ExxonMobil Corp.*, 289 F.3d at 375.

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Brandon*, 808 F.3d at 270; *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001). "A fact issue is 'material' if its resolution could affect the outcome of the action." *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015); *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006). Summary judgment "will not lie . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving party. *See Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016). However, factual controversies are resolved in favor of the non-movant "only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Salazar-Limon v. City of Houston,* 826

F.3d 272, 277 (5th Cir. 2016) (quoting *Little*, 37 F.3d at 1075). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002) (noting that unsworn pleadings do not constitute proper summary judgment evidence); *Bistany v. Reliance Standard Life Ins. Co.*, 55 F. Supp. 3d 956, 961 (S.D. Tex. 2014). Likewise, "unsubstantiated or conclusory assertions that a fact issue exists" do not meet this burden. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). Instead, the nonmoving party must present specific facts that show "the existence of a 'genuine' issue concerning every essential component of its case." *Id.* In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III. **FRAUDULENT INDUCEMENT COUNTERCLAIM**

Sherman alleges that, prior to entering into the PSA, it inquired regarding the reason the initial purchaser (whose identity was unknown to Sherman) refused to accept the remaining Flow deliveries. Sherman alleges that Garnet, Conn's representative, said that the purchaser had been "unable to fund" the additional purchases. Sherman alleges that had it known that TF LoanCo refused to accept the remaining Flow deliveries because of the allegations regarding the RSAs, Sherman

would not have entered into the PSA with Conn. Sherman alleges also that Conn made other false representations during the negotiation of the PSA. Sherman seeks compensatory and exemplary damages from Conn for the alleged fraudulent inducement to enter into the PSA.

"Under Texas law, the elements of fraudulent inducement are: 'a misrepresentation; that defendant knew the representation was false and intended [to] induce plaintiff to enter into the contract through that misrepresentation; that plaintiff actually relied on the misrepresentation in entering into the contract; and that plaintiff's reliance led plaintiff to suffer an injury through entering into the contract.'" *Hoffman v. L & M Arts*, 838 F.3d 568, 576 (5th Cir. 2016) (quoting *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012)). "[A] disclaimer of reliance may conclusively negate the element of reliance, which is essential to a fraudulent inducement claim." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 179 (Tex. 1997); *see also Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008); *Shakeri v. ADT Sec. Servs., Inc.*, 816 F.3d 283, 296 (5th Cir. 2016). For a disclaimer to preclude a fraudulent inducement claim, the parties must "use clear and unequivocal language." *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011).

In this case, the PSA between Conn and Sherman includes a disclaimer of reliance provision.[1] Specifically, the PSA provides that Sherman's "bid for and decision to purchase the Accounts pursuant to this Agreement is and was based upon [its] own independent evaluation." *See* PSA [Doc. # 65-1], ¶ 7.1. Sherman warranted and covenanted that it "relied solely on its own investigation and has not relied upon any oral or written information provided by [Conn] or its personnel, agents, representatives or independent contractors . . . other than those representations and warranties contained in this Agreement." *Id.* Sherman specifically acknowledged and agreed that it had "not relied upon, any statements other than those specifically contained in this Agreement." *Id.* Sherman acknowledged that it made such independent investigations as it deemed warranted into the collectability and value of the accounts it was purchasing, and all other facts it deemed material to its purchase and that it was "entering into this transaction solely on the basis of that investigation and [its] own judgment . . . ." *Id.* This clearly and unequivocally expresses the parties' intent to waive any reliance on representations during the negotiation of the PSA.

---

[1] In the *TF LoanCo* Case, it appears that there was no assertion that the Purchase and Sale Agreement between Conn and TF LoanCo contained a similar disclaimer of reliance. Therefore, it appears that the provision in the Conn-Sherman PSA was not mere boilerplate and was, instead, a negotiated provision.

Sherman argues that the law in Texas regarding disclaimers of reliance cannot apply to situations in which one party "lies" to the other party. This is precisely the situation that Texas law covers. Indeed, in *Schlumberger*, the Texas Supreme Court assumed that Schlumberger made affirmative misrepresentations during the negotiations. *See Schlumberger*, 959 S.W.2d at 177-78; *see also Forest Oil*, 268 S.W.3d at 57 (stating that *Schlumberger* decision assumed Schlumberger knowingly made misrepresentations with the intent that they should be relied upon). The Texas Supreme Court stated in *Italian Cowboy* that a contract that includes a disclaimer of reliance, if between "sophisticated parties represented by able attorneys" and expressed in clear and precise language, "may be binding even if it was induced by fraud." *See Italian Cowboy*, 341 S.W.3d at 336. As long as "knowledgeable and sophisticated business" entities who are represented by "competent and able legal counsel" express a clear and specific intent to disclaim reliance, that disclaimer is effective to preclude a fraudulent inducement claim. *See Forest Oil*, 268 S.W.3d at 57-58.

Sherman argues also that the PSA disclaims reliance only on representations by Conn and its "personnel, agents, representatives or independent contractors," and Garnet is defined in the PSA as "Loan Sale Advisor." There is no evidence suggesting that the "Loan Sale Advisor" is not an agent or representative of Conn. As

a result, there is no evidence to support Sherman's argument that the PSA does not disclaim reliance on representations by Garnet.[2]

The PSA includes a clear disclaimer of reliance on representations made during contract negotiations. Sherman argues that Conn misrepresented material information, but Sherman in the PSA represented, warranted and covenanted that it disclaimed reliance on representations made during negotiations and now claims the opposite. "It is not asking too much that parties not rely on extra-contractual statements that they contract not to rely on . . .." *Forest Oil*, 268 S.W.3d at 60. "If disclaimers of reliance cannot ensure finality and preclude post-deal claims for fraudulent inducement, then freedom of contract, even among the most knowledgeable parties advised by the most knowledgeable legal counsel, is grievously impaired." *Id.* at 61. Sherman's Motion for Summary Judgment on the fraudulent inducement claim is **denied** and Conn's Motion for Partial Summary Judgment on the fraudulent inducement claim is **granted**.

## IV. BREACH OF CONTRACT CLAIMS

---

[2] As noted by Conn in its Response, Conn would not be bound by any representations by Garnet unless Garnet was its agent or representative. *See* Response [Doc. # 73], p. 11.

Conn asserts that Sherman breached the PSA by refusing to accept delivery of and pay for the accounts. Sherman asserts that Conn breached the PSA by failing to provide correct information and failing to provide accounts that were at least potentially collectible. Sherman seeks summary judgment on its own breach of contract claim, as well as on Conn's contract claim.

"Under Texas law, the elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from that breach." *Crose v. Humana Ins. Co.*, 823 F.3d 344, 347-48 (5th Cir. 2016) (internal quotations and citations omitted). A plaintiff cannot prevail on a claim for breach of contract when the plaintiff has not performed its own duties under the contract. *See Mullins v. TestAmerica, Inc.,* 564 F.3d 386, 418 (5th Cir. 2009); *Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 327-28 (5th Cir. 2014); *see also Hernandez v. Gulf Group Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994) (holding that when one party materially breaches a contract, the other party is discharged or excused from any obligation to perform).

Pursuant to Section 2.1 of the PSA, Sherman agreed to purchase the accounts in the Bulk Delivery and in the monthly Flow deliveries. It is undisputed that Sherman has refused to purchase these accounts. Sherman argues that Conn

materially breached the PSA and, as a result, Sherman is entitled to terminate the PSA and require Conn to repurchase the accounts.

Sherman argues that Conn breached Section 8.5 of the PSA because the accounts were not handled by Conn "in accordance with all applicable laws." This argument is based on Sherman's belief that Conn's failure to provide a credit for terminated RSAs violated Texas law. Whether or not Sherman's belief is correct, there is a fact dispute regarding whether the breach was material such that Sherman would be entitled to terminate the RSA.[3]

Sherman argues also that Conn breached Section 8.6 of the PSA, which requires that the purchased accounts be "valid and enforceable." Specifically, Sherman argues that the "remarkably high dispute rate" caused all the accounts to be unenforceable. Conn has presented evidence that Sherman identified 206 accounts as disputed, representing .604% of the total number of accounts purchased under the PSA. Conn has agreed that 13 of these accounts involved valid disputes and would be repurchased in accordance with the PSA.[4] There exists a genuine issue of material fact regarding

---

[3] In the *TF LoanCo* decision, Judge Clark found that the failure to provide a credit for terminated RSAs did not violate "applicable laws," and that any breach of the PSA by Conn's failure to refund or credit balances on terminated RSAs would not be material.

[4] Section 9.4 of the PSA provides that Sherman's "sole and exclusive remedy" for an account that fails to comply with Conn's representations "shall be [Conn's] (continued...)

whether .604% of the total number of accounts is a "remarkably high dispute rate" that would permit Sherman to terminate the PSA and require Conn to repurchase all accounts. Similarly, there exists a genuine issue of material fact regarding whether Conn's refusal to repurchase all the accounts under these circumstances was a breach of the PSA.

Sherman alleges that Conn breached Section 8.7 of the PSA because the information Conn provided regarding the accounts was not materially accurate. This allegation is based on Sherman's position, discussed above, that the accounts should have reflected a credit for terminated RSAs. For the same reason discussed above, there is a fact dispute regarding whether the accounts were materially accurate and summary judgment on this basis is denied.

The parties have presented evidence that raises a genuine issue of material fact regarding whether Conn breached the PSA as alleged by Sherman and whether any breach was material. As a result, Sherman's Motion for Summary Judgment on Conn's breach of contract claim and on its own counterclaim for breach of contract is denied.

## V. **CONCLUSION AND ORDER**

---

4    (...continued)
repurchase of such account."

Sherman disclaimed any reliance on pre-contractual statements by Conn, and the disclaimer precludes its fraudulent inducement counterclaim. The parties have presented evidence that raises a genuine issue of material fact on the breach of contract claims and, as a result, summary judgment is inappropriate. Therefore, for the reasons explained herein, it is hereby

**ORDERED** that Conn's Motion for Partial Summary Judgment [Doc. # 68] is **GRANTED**, and Sherman's fraudulent inducement counterclaim is dismissed. It is further

**ORDERED** that Sherman's Motion for Summary Judgment [Doc. # 64] is **DENIED**. It is further

**ORDERED** that the parties' Joint Pretrial Order must be filed by **March 15, 2017**, and docket call is scheduled for **March 30, 2017, at 2:00 p.m.**

SIGNED at Houston, Texas, this **19th** day of **January, 2017**.

_____
NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE